Edward R. Greenfield, J.
This action evokes echoes of another Dreyfus case of long ago — marked by accusations of disloyalty, betrayal, and misappropriation of secrets. But *413 there the resemblance ends, for we are dealing here not with military secrets but with trade secrets, not with national honor and security but with business profits and commercial prestige.
Defendant Dreyfus Sales Corporation is the marketing and distributing organization for the Dreyfus Fund, one of the largest and most successful mutual funds in the world. Defendant Harvey I. Epstein is president of the sales corporation. Plaintiff is a corporation engaged in the business of sales training and promotion. It was headed by Herbert Abelow, a man of extensive experience in the sale of mutual funds, and a friend of Mr. Epstein.
In the fall of 1969, at a trade convention, Abelow approached Mr. Epstein to tell him about an exceptional idea he had, which he asked to be kept confidential. He also requested that if they did not reach an agreement on it, Dreyfus was not to use it. Epstein assured him that because of their long-standing relationship there was no cause for worry, and if Dreyfus did not use his idea, Abelow was free to take it to anyone else. Abelow thereupon disclosed his idea, which was to make tape players and monthly tape cassettes containing educational and promotional material available free of charge to independent mutual fund salesmen, with the players, cassettes and contents to be purchased from plaintiff. 7
Defendant had previously experimented with video and reel tapes for communication and education of its sales force, but what appealed to Epstein in Abelow’s idea was going directly to the independent fund salesman via tape cassettes. He indicated, however, that it would be too costly to supply the players and cassettes free of charge to salesmen. During the course of negotiations the plan was changed, to sell the program— players and one cassette a month on a technical aspect of fund sales — for $60 a year, with defendant bearing the cost of the players and the cassettes in part, and having the responsibility for advertising and promoting the program.
There were disagreements over the prices plaintiff was asking for the hardware, the use of defendant’s mailing list, and other matters, and although many memos were exchanged, no written agreement was consummated. Defendant decided not to buy the tapes and cassettes from plaintff corporation, but asked Abelow to work with it individually as a consultant on the program content. This suggestion was rejected, and all further contact between the parties was broken off in November of 1969.
*414 In January, 1970 Abelow received a flyer in the mail announcing the “Dreyfus Portable Sales Seminar”, the very name he had helped formulate, offering fund salesmen a free tape player and 12 monthly tape cassettes to ‘‘ increase product knowledge ” and “tell about proven sales techniques” for a total price of $60. Admittedly, in December of 1969, after negotiations with plaintiff had been terminated, Dreyfus proceeded with a tape cassette program of its own, purchasing the players and cassettes elsewhere, preparing the program content, and placing the promotional program advertising in publications going to the trade.
Plaintiff thereupon brought this action alleging that defendant, by wrongfully misappropriating plaintiff’s idea had breached its agreement of confidentiality, had been unjustly enriched, had breached its oral agreement to carry out the specifics of plaintiff’s suggested program at a guaranteed minimum price, and was guilty of fraud. By way of relief, plaintiff sought an injunction against defendant’s program, an accounting, and money damages.
The cause of action for fraud was dismissed during trial, and on the cause of action for breach of contract the issue of whether or not there was a meeting of the minds on the details of marketing and promoting the tape cassette program was submitted to the jury for a special verdict. The jury by its negative answer, found that despite all the negotiations no agreement between the parties had ever materialized. There remain for disposition the causes of action for breach of confidence and unjust enrichment which were expressly reserved for decision by the court.
The first cause of action alleges that plaintiff has been damaged because defendant’s breach of its promise of confidentiality has prevented plaintiff from selling its ‘ ‘ novel and unique program” to others. The second cause of action alleges that defendant has been unjustly enriched by the wrongful misappropriation of plaintiff’s unique and novel idea. Both causes of action turn on whether plaintiff’s idea was indeed novel, unique, and original. If it was not, it had no value as property, and would not suffice either as consideration for a promise of confidentiality, or as a basis for finding defendant was unjustily enriched.
There can be no question but that after the rupture of negotiations between the parties, defendant proceeded on its own with a program that was similar in many respects. It was offering players and 12 monthly tape cassettes to inde *415 pendent mutual fund salesmen under the name of ‘1 Dreyfus Portable 'Sales Seminar” at a price of $60, and the program content covered essentially the same topics as those suggested by plaintiff. While the use of tapes for education and sales training was known to the industry, and defendant had experimented itself on a limited basis, unquestionably it was the impetus of plaintiff’s suggestion which galvanized it into action. While there are points of difference as to the way the program was promoted, the genesis of the defendant’s ultimate actions was the proposal by plaintiff.
Defendant acted on plaintiff’s idea. Plaintiff sues for the theft of that idea. Does the use of that idea create the legal obligation of compensation? An idea is impalpable, intangible, incorporeal, yet it may be a stolen gem of great value, or mere dross of no value at all, depending on its novelty and unique- . ness. Its utility is not the test. An idea may be regarded as useful, and worth putting into execution, even though the imparting of it gives no claim for recovery to its originator. Thus in Soule v. Bon Ami Co. (201 App. Div. 794, affd. 235 N. Y. 609) plaintiff promised to tell defendant a method to increase its profits. The revelation that it should raise its prices was held not to entitle plaintiff to compensation. Similarly, in Lueddecke v. Chevrolet Motor Co. (70 F. 2d 345) the suggestion that the way to correct an improperly balanced car was to relocate some of the weightier components, though adopted, gave rise to no recovery; and in Anderson v. Distler (173 Misc. 261) where plaintiff offered to reveal a matter of great value, and then suggested defendant pay the premiums and not allow his elderly father-in-law’s insurance policies to lapse, which defendant did to his great financial advantage, plaintiff’s claim for compensation was disallowed. Not every “ good idea” is a legally protectible idea. A sensible suggestion must have more to it than good sense to be compensable. Its adoption may be the occasion for gratitude or the voluntary bestowal of tangible reward, but that does not of itself call into play legal compulsion.
Nothing is bestowed if the facts of a 66 secret ” imparted in confidence are already the subject of general knowledge. (National Starch Prods. v. Polymer Inds., 273 App. Div. 732.) Under those circumstances the promise of compensation or confidentiality, even though undoubtedly made, is without consideration. (Bristol v. Equitable Life Assur. Soc. of N. Y., 132 N. Y. 264.) “No person can by contract monopolize an idea that is common and general to the whole world.” (Soule v. *416 Bon Ami Co., supra, p. 797.) An agreement premised on the disclosure of a secret is a blind deal. When the purveyor of that secret exacts a promise of confidentiality, he knows what he is dealing with, but the recipient is in the dark. The enforceabilty of such a threshold agreement — a promise in exchange for a revelation — turns on the value of the disclosure. To paraphrase Holmes, J., in Du Pont Powder Co. v. Masland (244 U. S. 100, 102), while the confidence cannot be denied, its worth as property can be. If the idea is of such a nature that it cannot be appropriated by a party, it cannot be misappropriated by another. One cannot be forever barred from using a worthwhile but unoriginal idea merely because it was once asked to be treated in confidence.
Was plaintiff’s idea here of such originality as to be deemed property of a value sufficient to constitute consideration for a promise not to use it without compensation? Was it so uniquely plaintiff’s creation that its use without payment can be labelled as the theft of an idea? The fact that the basic idea was simple — using tape for sales training and indoctrination — does not negate its value, for truly great ideas, like the wheel or the safety pin, can be stunning in their simplicity. Taking a page from the patent law dealing with the property right in inventions, the idea need not reflect the ‘1 flash of genius ”, but it must show genuine novelty and invention, and not a merely clever or useful adaptation of existing knowledge. (69 C. J. S., Patents, § 50, p. 249.) Improvement of standard technique or quality, the judicious use of existing means, or the mixture of Imown ingredients in somewhat different proportions— all the variations on a basic theme — partake more of the nature of elaboration and renovation than of innovation. (Bell & Bogart Soap Co. v. Petrolia Mfg. Co., 25 Misc. 66.)
Concededly, there was nothing new in the idea of using tape or tape cassettes to carry a sales message or a wealth of repeatable information. It had been done in many fields, and even in the mutual funds field, though no prior efforts quite fit the bill. Nor was there anything unique about putting the material, which was not only educational but promotional and self-laudatory, directly into the hands of the independent salesmen. While plaintiff insisted that was the truly unique aspect of its plan — bypassing the middle-men, the broker-dealer organizations— and that was one aspect the defendant found attractive — putting the sales message on a convenient tape cassette and offering it at an attractive price not for immediate profit but for long-range institutional advertising, was no more than *417 a clever sales “gimmick”, useful, appealing, but hardly of dazzling originality. The topics to be covered, the content, the media for promotion, and the marketing plan (six-month trial subscriptions, a cassette a month with player “free”, quantity discounts, etc.) were natural outgrowths of existing factual patterns, with no element of novelty.
Plaintiff makes much of defendant’s own words describing its program. Defendant advertised it to the trade as “an exciting new development ’ ’, and told the subscribers they were participating in a “ unique program ”. This is the traditional puffery of advertising jargon. Just as the language of the sailor is punctuated by pithy expletives, so the language of the salesman is studded with superlatives and hyperbole. But what is “unique” in advertising need not be regarded as such in the law. The medium alters the message.
If there be no novelty, neither the promise of the protected secret nor the claim of theft and unjust enrichment can stand. “ Lack of novelty in an idea is fatal to any cause of action for its unlawful use.” (Bram v. Dannon Milk Prods., 33 A D 2d 1010.) The fact that the parties had extended negotiations does not fortify plaintiff’s claim of the value of its idea. The details of presentation and marketing changed considerably from September to November. Clearly it was quite malleable and not in such fixed and concrete form as to indicate a protectible idea. “ Ideas not reduced to concrete form are not protected ”. (O’Brien v. RKO Radio Pictures, 68 F. Supp. 13, 14, citing Bowen v. Yankee Network, 46 F. Supp. 62, 63; cf. Cole v. Philips H. Lord, Inc., 262 App. Div. 116.)
It is apparent that to plaintiff the purveying of the idea was an incidental part of its program to sell the cassettes and players one of its principals manufactured, and that the defendant, for its part, was bargaining more for Abelow’s marketing skill and “ know-how ” than for his “secret”. Even the imparting of a simple and unoriginal idea can become the basis for compensation, as in High v. Trade Union Courier Pub. Corp. (31 Misc 2d 7) where plaintiff’s suggestion for defendant to save on taxes was to utilize the exemptions provided by law, but there the court found an express contract to pay in which the plaintiff’s skill and services were a major consideration. Here the jury has rejected the notion of any express contract based on plaintiff’s services, and the idea alone is too flimsy a craft on which to base any recovery.
There is no evidence defendant was appreciably and unjustly enriched, nor that plaintiff was deprived of the chance of pro *418 moting its program with anyone else. Plaintiff’s claim appears to have been conceived in hope, born out of disappointment, and nurtured in labored elaboration, but it must die aborning. The first and second causes of action, like the third and fourth before them, cannot be sustained. Judgment for defendant.