Hwesu S. MURRAY, Plaintiff–Appellant,

v.

NATIONAL BROADCASTING COMPA-
NY, INC. and Brandon Tartikoff,
Defendants–Appellees.

No. 515, Docket 87–7695.

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1988.

Decided April 18, 1988.

Joseph J. Santora, New York City (Michael S. Allen, Santora & McKay, New York City, of counsel), for plaintiff-appellant.

Thomas R. Jones, New York City (Susan Buckley, Lisa Pearson, Ellen L. Weintraub, Cahill Gordon & Reindel, New York City, of counsel), for defendants-appellees.

Before WINTER, PRATT and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

It was almost a generation ago that a young comedian named Bill Cosby became the first black entertainer to star in a dramatic network television series. That program, *I Spy*, earned Cosby national recognition as an actor, including three Emmy Awards (1966, 1967 and 1968) for best performance in a dramatic series, and critical acclaim for the portrayal of a character without regard to the actor's race. Although keenly aware of the significance of his achievement in breaking the color line on network television, Cosby set his sights then on "accomplish[ing] something more significant for the Negro on TV."[1] In an interview in 1965, he envisioned a different approach to the situation comedy genre made popular by *The Dick Van Dyke Show*. The *Daily News* described Cosby's "dream" series as not

> unlike other situation comedies. There'll be the usual humorous exchanges between husband and wife.... Warmth and domestic cheerfulness will pervade the entire program.
>
> Everything on the screen will be familiar to TV viewers. But this series will be

radically different. Everyone in it will be a Negro.

> \* \* \* \* \* \*
>
> ... "I'm interested in proving there's no difference between people," [explained Cosby]. "My series would take place in a middle-income Negro neighborhood. People who really don't know Negroes would find on this show that they're just like everyone else."[2]

Nearly twenty years later, on September 20, 1984, Cosby's dream for a "color-blind" family series materialized with the premier of *The Cosby Show*—a situation comedy about a family known as the Huxtables. Bill Cosby stars in the leading role as Heathcliff ("Cliff") Huxtable together with his TV wife Clair and their five children.

Plaintiff-appellant Hwesu Murray, an employee of defendant-appellee ("NBC"), claims in the instant case that in 1980, four years prior to the premier of *The Cosby Show* on NBC's television network, he proposed to NBC a "new" idea for a half-hour situation comedy starring Bill Cosby. In a written proposal submitted to NBC, Murray described his series called "Father's Day" as "wholesome ... entertainment"

> which will focus upon the family life of a Black American family.... The leading character will be the father, ... a devoted family man and a compassionate, proud, authority figure....
>
> \* \* \* \* \* \*
>
> ... The program may well resemble "Father Knows Best" and "The Dick Van Dyke Show." It will be radically different from "The Jeffersons," "Good Times," "Different Strokes," and "That's My Mama." The father will not be a buffoon, a supermasculine menial, or a phantom.... The program will show how a Black father can respond with love ..., and will present ... a closely-knit family....

On this appeal from an order of the United States District Court for the South-

---

**1.** Lardine, *Looking to the Future: Bill Cosby Has Dreams of an All–Negro TV Series*, New York Daily News, Sept. 19, 1965, Sunday Magazine, at 6.

**2.** *Id.*

ern District of New York (Cedarbaum, *J.*) granting defendants-appellees' motion for summary judgment, we are asked to determine whether, under New York law, plaintiff has a legally protectible interest in his idea which he maintains was used by NBC in developing *The Cosby Show.* Because we agree with the district court's conclusion that, under New York law, lack of novelty in an idea precludes plaintiff from maintaining a cause of action to prevent its unauthorized use, we affirm the district court's order granting summary judgment and dismissing the complaint.

## BACKGROUND

Plaintiff Hwesu S. Murray has been employed in the television industry for the past ten years. Murray holds a Bachelor of Arts degree in English and graduate degrees in broadcast journalism and law. In 1979, defendant-appellee NBC hired Murray as a Unit Manager and financial analyst in its sports division. A year later, plaintiff contacted an NBC official outside of NBC Sports about some "extracurricular" ideas he had for future television programs, and the official apparently instructed him to submit his proposals in writing. Soon thereafter, in June 1980, plaintiff submitted five written proposals, one of which was entitled "Father's Day." Murray allegedly informed NBC that if it were interested in any of the proposals, he expected to be named executive producer and to receive appropriate credit and compensation as the creator of the eventual program. Plaintiff also allegedly told NBC that his ideas were being submitted in confidence.

Murray's proposal for "Father's Day" is the subject matter of this action. The NBC official who originally had requested it encouraged Murray to "flesh out" his proposal and submit it to Josh Kane, then an NBC vice-president and a top official with NBC Entertainment, the division of NBC responsible for network television programming. Plaintiff thereupon submitted to Kane an expanded proposal for "Father's Day." In a two-page memorandum dated November 1, 1980, Murray first suggested that Bill Cosby play the part of the father. At that time, plaintiff also made several other casting suggestions, including roles for a working spouse and five children, and again indicated that the proposed series would "combine humor with serious situations in a manner similar to that of the old *Dick Van Dyke Show* " but "with a Black perspective." Murray's expanded proposal concluded with the observation that, "[l]ike *Roots,* the show will attempt to depict life in a [closely-knit] Black family, with the addition of a contemporary, urban setting."

NBC apparently decided not to pursue Murray's proposal. On November 21, 1980, Kane returned the "Father's Day" submission to plaintiff and informed him that "we are not interested in pursuing [its] development at this time."

Four years later, in the fall of 1984, *The Cosby Show* premiered on NBC. *The Cosby Show* is a half-hour weekly situation comedy series about everyday life in an upper middle-class black family in New York City. The father, played by Bill Cosby, is a physician, and the mother is a lawyer. In its first season, *The Cosby Show* soared to the top of the Nielsen ratings and has become one of the most popular programs in television history. The show is highly regarded by critics and is also a huge commercial success.

Less than a month after viewing the premier, plaintiff wrote to NBC to advise it that *The Cosby Show* had been derived from his idea for "Father's Day." In January 1985, NBC responded through its Law Department, stating its position that " 'Father's Day' played absolutely no role in the development of 'The Cosby Show' ... [since m]uch of the substance and style of 'The Cosby Show' is an outgrowth of the humor and style developed by Bill Cosby throughout his career." NBC further maintained that *The Cosby Show* was developed and produced by The Carsey–Werner Company ("Carsey–Werner"), an independent production company and the executive producers of the series.

In his complaint, plaintiff claimed that *The Cosby Show's* portrayal of a strong black family in a nonstereotypical manner

is the essence of "Father's Day," and "[i]t is that portrayal of Black middle-class life that originated with plaintiff." Murray also alleged that Josh Kane showed plaintiff's "Father's Day" proposal to his superiors at NBC, including defendant-appellee Brandon Tartikoff, President of NBC Entertainment. Tartikoff, together with Cosby and Carsey–Werner, have been credited with the creation and development of *The Cosby Show.* Plaintiff maintains that NBC and Tartikoff deliberately deceived plaintiff into believing that NBC had no interest in "Father's Day" and then proceeded to develop and eventually produce plaintiff's idea as *The Cosby Show.*

Plaintiff's complaint stated a number of causes of action arising out of defendants' alleged appropriation of his idea. Among those relevant to this appeal are plaintiff's claims of race discrimination under 42 U.S.C. §§ 1981 and 1982, false designation of origin under the Lanham Act, 15 U.S.C. § 1125, and various state law claims, including misappropriation, conversion, breach of implied contract, unjust enrichment and fraud. Plaintiff sought, *inter alia,* damages and declaratory and injunctive relief as the "sole owner of all rights in and to the idea, proposal and property [known as] 'Father's Day.'"

In a decision dated July 15, 1987, 671 F.Supp. 236 (S.D.N.Y.), the district court considered whether plaintiff's idea was "property" that could be subject to legal protection. Since the parties agreed that New York law applied to plaintiff's claims, the district court proceeded to analyze defendants' motion for summary judgment in light of the New York Court of Appeals decision in *Downey v. General Foods Corp.,* 31 N.Y.2d 56, 334 N.Y.S.2d 874, 286 N.E.2d 257 (1972). In *Downey,* the New York court established the general proposition that "[l]ack of novelty in an idea is fatal to *any* cause of action for its unlawful use." 334 N.Y.S.2d at 877, 286 N.E.2d at 259 (quoting *Bram v. Dannon Milk Prods., Inc.,* 33 A.D.2d 1010, 307 N.Y.S.2d 571, 571 (1st Dep't 1970)) (emphasis added). The district court, therefore, determined that the "sole issue" before it was the novelty of plaintiff's "Father's Day" pro-

posal, and accordingly assumed, for purposes of defendants' motion, that defendants in fact used plaintiff's idea in the development of *The Cosby Show. See Ed Graham Productions, Inc. v. National Broadcasting Co.,* 75 Misc.2d 334, 347 N.Y. S.2d 766, 769 (Sup.Ct.N.Y.Cty.1973) (even assuming defendant used plaintiff's idea, plaintiff may not recover if idea is "wholly lacking in novelty").

In focusing on the novelty of plaintiff's proposal, the district court determined that Murray's idea was not subject to legal protection from unauthorized use because "Father's Day"

> merely combined two ideas which had been circulating in the industry for a number of years—namely, the family situation comedy, which was a standard formula, and the casting of black actors in non-stereotypical roles.

The district court found that, to the extent "Father's Day," in Murray's words, "may well resemble 'Father Knows Best' and 'The Dick Van Dyke Show,'" it could not be considered novel. In addition, the portrayal of a black family in nonstereotypical roles, according to the court, precluded a finding of novelty because 1) the television networks already had cast some black actors, including Bill Cosby himself, e.g., *I Spy* (1965–68), *The Bill Cosby Show* (1969–71), and *Fat Albert and the Cosby Kids* (1972–79), in such roles, and 2) the idea of combining the family situation comedy theme with an all-black cast already had been suggested publicly by Bill Cosby some twenty years before the creation of *The Cosby Show.* The district court also determined that Murray's casting of Bill Cosby in the lead role in "Father's Day" was no mere coincidence. Rather, it was "further evidence that Cosby is connected—even in plaintiff's mind—with the concept that plaintiff seeks to monopolize."

In view of the foregoing, the district court granted defendants' motion for summary judgment and dismissed the various claims presented in the complaint, concluding that the lack of novelty in plaintiff's proposal was fatal to any cause of action for unauthorized use of that idea.

## DISCUSSION

### I.

■ Our review of the instant appeal is limited to deciding whether the district court properly concluded that there was "no genuine issue as to any material fact" entitling defendants to "judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).

As the district court recognized, the dispositive issue in this case is whether plaintiff's idea is entitled to legal protection. Plaintiff points to "unique"—"even revolutionary"—aspects of his "Father's Day" proposal that he claims demonstrate "genuine novelty and invention," *see Educational Sales Programs, Inc. v. Dreyfus Corp.*, 65 Misc.2d 412, 317 N.Y.S.2d 840, 844 (Sup. Ct.N.Y.Cty.1970), which preclude the entry of summary judgment against him. Specifically, plaintiff contends that his idea suggesting the nonstereotypical portrayal of black Americans on television is legally protectible because it represents a real breakthrough. As he stated in his affidavit in opposition to defendants' motion,

> [w]hen I created "Father's Day", I had in mind ... a show that ... would portray a Black family as it had never been shown before on television.... I also ... desire[d] to produce a show with strong and positive role models for the Black community, and to make a statement regarding the love and integrity of the Black family to the world. I think every Black person in this country knows there has been a need for this, and that never before on television had there been a portrayal of a Black family as I created it for "Father's Day."

Murray claims that the novelty of his idea subsequently was confirmed by the media and the viewing public which instantly recognized the "unique" and "revolutionary" portrayal of a black family on *The Cosby Show*.

We certainly do not dispute the fact that the portrayal of a nonstereotypical black family on television was indeed a breakthrough. Nevertheless, that breakthrough represents the achievement of what many black Americans, including Bill Cosby and plaintiff himself, have recognized for many years—namely, the need for a more positive, fair and realistic portrayal of blacks on television. While NBC's decision to broadcast *The Cosby Show* unquestionably was innovative in the sense that an intact, nonstereotypical black family had never been portrayed on television before, the mere fact that such a decision had not been made before does not necessarily mean that the idea for the program is itself novel. *See Educational Sales Programs*, 317 N.Y.S.2d at 843 ("[n]ot every 'good idea' is a legally protectible idea").

Consequently, we do not agree with appellant's contention that the nonstereotypical portrayal of a black middle-class family in a situation comedy is novel because

> [t]o argue otherwise would be the equivalent of arguing that since there had always been baseball, and blacks in baseball, there was nothing new about Jackie Robinson playing in the major leagues— or that since there had always been schools in Little Rock, Arkansas, and blacks in schools, there was nothing new about integrating schools in Little Rock.

As appellees persuasively point out in response to this analogy, Murray has "confuse[d] the 'idea' with its execution.... Indeed, the idea of integration ... had been discussed for decades prior to the actual events taking place." Similarly, we believe, as a matter of law, that plaintiff's idea embodied in his "Father's Day" proposal was not novel because it merely represented an "adaptation of existing knowledge" and of "known ingredients" and therefore lacked "genuine novelty and invention." *Educational Sales Programs*, 317 N.Y.S.2d at 844.

We recognize of course that even novel and original ideas to a greater or lesser extent combine elements that are themselves not novel. Originality does not exist in a vacuum. Nevertheless, where, as here, an idea consists in essence of nothing more than a variation on a basic theme—in this case, the family situation comedy—novelty cannot be found to exist. *Id.; see Surplus Equipment, Inc. v. Xerox Corp.*, 120 A.D.2d 582, 502 N.Y.S.2d 491, 492 (2d Dep't 1986). The addition to this basic theme of the portrayal of blacks in nonstereotypical roles does not alter our conclusion, especially in view of the fact that Bill Cosby previously had expressed a desire to do a situation comedy about a black family and that, as the district court found, Cosby's entire career has been a reflection of the positive portrayal of blacks and the black family on television.

Appellant would have us believe that by interpreting New York law as we do, we are in effect condoning the theft of ideas. On the contrary, ideas that reflect "genuine novelty and invention" are fully protected against unauthorized use. *Educational Sales Programs*, 317 N.Y.S.2d at 844. But those ideas that are not novel "are in the public domain and may freely be used by anyone with impunity." *Ed Graham Productions*, 347 N.Y.S.2d at 769. Since such non-novel ideas are not protectible as property, they cannot be stolen.

In assessing whether an idea is in the public domain, the central issue is the uniqueness of the creation. Murray insists that there is at least a question of fact as to the novelty of "Father's Day" because *The Cosby Show* is indisputably unique. In support of this contention, plaintiff points to the fact that NBC contracted with Carsey–Werner for the right of NBC to broadcast *The Cosby Show*. The contract apparently was executed by the parties before there had been any written development of the proposed series. The "program idea" for *The Cosby Show*, however, was described in the contract as "unique, intellectual property." According to plaintiff, the inescapable conclusion is that the idea—whether it be "Father's Day" or *The Cosby Show*—could not possibly have been in the public domain if NBC expressly contracted to purchase it from Carsey–Werner.

We disagree. The Carsey–Werner contract contemplates a fully-produced television series. The contract refers to, *inter alia*, the program format, titles, set designs, theme music, stories, scripts, and art work as well as to the "program idea." Taken together, these elements no doubt would be considered original and therefore protectible as property. On the other hand, we think it equally apparent that the mere idea for a situation comedy about a nonstereotypical black family—whether that idea is in the hands of Murray, Carsey–Werner, NBC, or anyone else—is not novel and thus may be used with impunity.

Finally, as an alternative attack on the propriety of the district court's order granting summary judgment, plaintiff posits that even if his idea was not novel as a matter of law, summary judgment still was inappropriate because his proposal was solicited by defendants and submitted to them in confidence. In this regard, Murray relies on *Cole v. Phillips H. Lord, Inc.*, 262 A.D. 116, 28 N.Y.S.2d 404 (1st Dep't 1941). Murray contends that *Cole* stands for the proposition that when an idea is protected by an agreement or a confidential relationship, a cause of action arises for unauthorized use of that idea irrespective of the novelty of the subject matter of the contract. Plaintiff's reliance on *Cole* is misplaced in light of subsequent cases, particularly the New York Court of Appeals decision in *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 334 N.Y.S.2d 874, 286 N.E.2d 257 (1972). *See also Ferber v. Sterndent Corp.*, 51 N.Y.2d 782, 433 N.Y.S.2d 85, 86, 412 N.E.2d 1311 (1980) ("[a]bsent a showing of novelty, plaintiff's action to recover damages for illegal use of 'confidentially disclosed ideas' must fail as a matter of law"); *Educational Sales Programs*, 317 N.Y.S.2d at 844 ("[o]ne cannot be forever barred from using a worthwhile but unoriginal idea merely because it was once asked to be treated in confidence").

Consequently, we find that New York law requires that an idea be original or novel in order for it to be protected as

**994**

property. *See Downey*, 334 N.Y.S.2d at 877, 286 N.E.2d at 259. Since, as has already been shown, plaintiff's proposal for "Father's Day" was lacking in novelty and originality, we conclude that the district court correctly granted defendants' motion for summary judgment.

## II.

Having determined that plaintiff's idea is not property under New York law, we turn now to a consideration of the district court's dismissal of the various claims in the complaint.

### A. *State law claims*

█ "[W]hen one submits an idea to another, no promise to pay for its use may be implied, and no asserted agreement enforced, if the elements of novelty and originality are absent...." *Downey*, 334 N.Y.S.2d at 877, 286 N.E.2d at 259. As the district court recognized, non-novel ideas do not constitute property. As a result, there can be no cause of action for unauthorized use of Murray's proposal since it was not unlawful for defendants to use a non-novel idea. We conclude therefore that the district court properly dismissed plaintiff's state law claims for breach of implied contract, misappropriation, conversion, and unjust enrichment. *See Lehman v. Dow Jones & Co.*, 783 F.2d 285, 300 (2d Cir.1986) (Friendly, J.) (dismissing claim for breach of implied contract because plaintiff's ideas were neither novel nor original under New York law); *McGhan v. Ebersol*, 608 F.Supp. 277, 287 (S.D.N.Y.1985) (dismissing claims for misappropriation, breach of fiduciary duty, and implied or quasi-contract because plaintiff's ideas were not novel or unique under New York law); *Downey*, 334 N.Y.S.2d at 877, 286 N.E.2d at 259 (dismissing claims for misappropriation, breach of express contract, breach of implied contract, and unjust enrichment after finding lack of novelty); *see also Wilson v. Bristol–Myers Co.*, 118 A.D.2d 50, 503 N.Y.S.2d 334, 336 (1st Dep't 1986) (citing *Downey* and quoting *Bram v. Dannon Milk Prods., Inc.*, 33 A.D.2d 1010, 307 N.Y.S.2d 571, 571 (1st Dep't 1970) ("[l]ack of novelty

in an idea is fatal to any cause of action for its unlawful use")).

Similarly, plaintiff's fraud claim also fails since, as the district court recognized, plaintiff "cannot be defrauded of property that he does not own." Essential to a cause of action for fraud is a showing of injury as the proximate result of the alleged fraudulent conduct. *See Dress Shirt Sales, Inc. v. Hotel Martinique Assocs.*, 12 N.Y.2d 339, 239 N.Y.S.2d 660, 663, 190 N.E.2d 10 (1963). Because plaintiff's idea for "Father's Day" was in the public domain when NBC allegedly used it in the creation of *The Cosby Show*, Murray suffered no injury. His cause of action for fraud thus was properly dismissed.

### B. *Civil Rights claims*

In his complaint, Murray alleged that defendants discriminated against him on account of his race, in violation of 42 U.S.C. §§ 1981 and 1982, by refusing to contract with him regarding his "Father's Day" proposal or to recognize his rights in *The Cosby Show* by contracting instead with white producers, i.e., Marcia Carsey and Thomas Werner of Carsey–Werner. Section 1981 provides in pertinent part that all citizens of the United States "shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." Section 1982 extends the same protection to, among other things, the right to purchase, sell and hold personal property. The district court found plaintiff's claims for discrimination deficient since they were premised on the fact that his idea "constituted property for which he could contract." Once the court determined that his idea lacked novelty, it dismissed the section 1981 and 1982 claims for failure to show a deprivation of a property right.

█ The existence of a protectible property interest is an essential element of a section 1982 claim. *See Memphis v. Greene*, 451 U.S. 100, 122 & n. 35, 101 S.Ct. 1584, 1598, & n. 35, 67 L.Ed.2d 769 (1981); *Gonzalez v. Southern Methodist University*, 536 F.2d 1071, 1072 (5th Cir.1976), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977). Section 1982 concerns

only impairment of *property* interests because of race. *Greene*, 451 U.S. at 122, 101 S.Ct. at 1598,. If an idea cannot be considered property, there can be no violation of section 1982. Thus, we find that the district court correctly dismissed plaintiff's section 1982 claim.

■ As for plaintiff's section 1981 claim, we note that in order for plaintiff to maintain a cause of action under that section, he "must show both that he was subjected to intentional discrimination, and that this discrimination interfered with a contractual relationship." *Krulik v. Board of Educ.*, 781 F.2d 15, 23 (2d Cir.1986) (citations omitted). Although we agree with plaintiff that section 1981 does not speak in terms of property, *see Runyon v. McCrary*, 427 U.S. 160, 170–71, 96 S.Ct. 2586, 2594, 49 L.Ed.2d 415 (1976) (section 1981 right to " 'make and enforce contracts' is violated if a private offeror refuses to extend [on account of race] the same opportunity to enter into contracts as he extends to white offerees"), section 1981 does require that there be a contract right underlying the claim. As *Downey* makes clear, however, there can be no contract right in a non-novel idea. 334 N.Y.S.2d at 877, 286 N.E.2d at 259.

Furthermore, Murray's contention that he was deprived of his right under section 1981 to contract with NBC for his services as executive producer is unfounded. Murray alleged that he submitted his "Father's Day" proposal to defendants in confidence on the understanding that if they used his idea he expected NBC to utilize his services as producer. Given the lack of novelty in plaintiff's idea, however, there could be no consideration for the alleged promise and hence no enforceable contract right upon which to base a section 1981 claim. *See Soule v. Bon Ami Co.*, 201 A.D. 794, 195 N.Y.S. 574, 576 (2d Dep't 1922) (dismissing complaint for failure to show that contract involving non-novel idea was supported by consideration), *aff'd*, 235 N.Y. 609, 139 N.E. 754 (1923); 1 Williston on Contracts, § 115 at 457 (3d ed. 1957) ("an idea lacking novelty and originality ... will not readily

be regarded ... as ... consideration for [a] promise").

Accordingly, the district court properly dismissed plaintiff's section 1981 claim.

### C. *Lanham Act claim*

■ Lastly, we find that Judge Cedarbaum correctly determined that plaintiff's claim for false designation of origin, *see* Lanham Act § 43(a), 15 U.S.C. § 1125(a), regarding the credits to *The Cosby Show*, cannot survive in light of the court's granting of summary judgment against plaintiff on the issue of novelty. Even assuming defendants used plaintiff's idea, NBC's failure to designate Murray as the creator of *The Cosby Show* does not mean that the credits to the program are false since ideas in the public domain may be used with impunity and thus do not require attribution.

### CONCLUSION

Our review of New York intellectual property law leads us to the inescapable conclusion that the district court did not err in deciding that there was no material issue of fact as to the novelty of plaintiff's proposal. In our judgment, the basic premise underlying the concept of novelty under New York law is that special protection is afforded only to truly innovative ideas while allowing the free use of ideas that are "merely clever or useful adaptation[s] of existing knowledge." *Educational Sales Programs*, 317 N.Y.S.2d at 844. In this case, the record indicates that plaintiff's idea for a situation comedy featuring the nonstereotypical portrayal of a black family simply was not uniquely plaintiff's creation. Accordingly, we affirm the district court's order granting summary judgment and dismissing the complaint.

*Affirmed.*

GEORGE C. PRATT, Circuit Judge, dissenting:

Today this court holds that the idea underlying what may well be the most successful situation comedy in television history was, in 1980, so unoriginal and so en-

trenched in the public domain that, as a matter of law, it did not constitute intellectual property protected under New York law. Because I am convinced that the novelty issue in this case presents a factual question subject to further discovery and ultimate scrutiny by a trier of fact, I respectfully dissent.

At least for purposes of this appeal, it is given that Murray presented NBC with an idea for a television series; that, after showing interest in Murray's initial idea, NBC then asked him to submit a more detailed proposal; and that NBC then actually used his proposal in developing *The Cosby Show*, but at the same time refused to provide any compensation to Murray. The only question on appeal is whether there is evidence to indicate that Murray's idea possessed the novelty and originality required under New York law. *See Downey v. General Foods Corp.*, 31 N.Y.2d 56, 334 N.Y.S.2d 874, 286 N.E.2d 257 (1972); *Bram v. Dannon Milk Prods.*, 33 A.D.2d 1010, 307 N.Y.S.2d 571 (1st Dep't 1970). Specifically, in order to affirm the district court judgment, this court must conclude that there is insufficient evidence to present a triable issue on novelty. *Ferber v. Sterndent Corp.*, 51 N.Y.2d 782, 784, 433 N.Y.S.2d 85, 86, 412 N.E.2d 1311, 1312 (1980); *see Ed Graham Productions, Inc. v. National Broadcasting Co.*, 75 Misc.2d 334, 337, 347 N.Y.S.2d 766, 769 (1973) (idea must be "wholly lacking in novelty").

I agree with the majority that there is some evidence that Murray's idea was not novel. But clearly, there is also evidence indicating novelty. Initially, there is the admission by NBC, in its agreement with Carsey–Werner, that the television series is "unique, intellectual property." Although NBC argues, and the majority agrees, that this clause refers to a "fully-produced television series", and not Murray's program idea, such analysis ignores two important facts.

First, the "unique, intellectual property" language is found in the remedies section of the development agreement. This section gives NBC the right to prevent the loss of its "unique, intellectual property" should Carsey–Werner fail to perform. However, if Carsey–Werner does not perform—that is, if it subsequently refuses to develop the television series—the only "unique, intellectual property" to be protected is the program's underlying idea. In other words, from the outset NBC wanted to make certain that if its relationship with Carsey–Werner faltered, the novel idea it had given Carsey–Werner would be protected from disclosure. And because, for purposes of this appeal, we must assume that NBC got its idea from Murray, the Carsey–Werner development agreement, at a minimum, constitutes admissible evidence that Murray's idea was unique, thus making the novelty determination a question of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

That the "unique, intellectual property" mentioned in the agreement refers to Murray's basic idea underlying the series rather than a fully-produced series, also finds support in the second fact the majority ignores. The definition section of the development agreement specifically defines this "property", not, as the majority contends, as "titles, set designs, theme music, stories, scripts, and art work"—indeed, these are separately defined in the agreement as the "elements" to be developed by Carsey–Werner—but rather, the development agreement defines the actual "property" exclusively to be the "story, literary property, program idea, and/or program format *which form(s) the basis*" for the television series. This provision provides additional evidence that it was Murray's underlying idea, not the developed elements of the series as a whole, which NBC desired to protect as unique and novel property.

Nor is the agreement the only piece of evidence indicating an issue of fact as to novelty. In 1985, NBC admitted that Murray had "rights" in his idea, but determined it had no interest in acquiring those rights. At trial, both Cosby and Tartikoff stated that they believed *The Cosby Show* to be novel and unique. NBC admitted that the reason it normally returned rejected submissions, as it did in Murray's case,

was that the "material belong[ed] to the submitter." In short, there is substantial evidence, both within and independent of the Carsey–Werner development agreement, which directly conflicts with the majority's holding that, as a matter of law, Murray's idea was not novel.

The fact that the basic idea had been expressed by Cosby some fifteen years before Murray submitted his proposal to NBC does not erase these factual issues. To say, as a matter of law, that an idea is not novel because it already exists in general form, would be to deny governmental protection to any idea previously mentioned anywhere, at anytime, by anyone. I do not believe New York law defines "novelty" so strictly, especially in the area of mass communications, an area long recognized by state courts as "a specialized field having customs and usages of its own" where "a property right exists" in "a combination of ideas evolved into a program." *Cole v. Phillip H. Lord, Inc.*, 262 A.D. 116, 121, 28 N.Y.S.2d 404, 409 (1st Dep't 1941). Indeed, in a market the very existence of which depends on the generation and development of ideas, it may be impossible to formulate a concept that has not previously been expressed by someone, somewhere.

Novelty, by its very definition, is highly subjective. As fashion, advertising, and television and radio production can attest, what is novel today may not have been novel 15 years ago, and what is commonplace today may well be novel 15 years hence. In this instance, where Cosby expressed the concept almost a decade and a half before Murray submitted his proposal, where it was Murray's idea that NBC actually used, where there is no evidence indicating NBC knew anything of the program idea until Murray submitted it, *compare Downey v. General Foods Corp.*, 31 N.Y. 2d 56, 60, 334 N.Y.S.2d 874, 877–78, 286 N.E.2d 257 (1972) (no novelty because defendant had "envisaged" *and* "utilized" plaintiff's idea for "years before the plaintiff submitted it") *with Werlin v. Readers Digest Ass'n Inc.*, 528 F.Supp. 451, 466 (S.D.N.Y.1981) (even though plaintiff's idea was in public domain, no evidence that defendant knew about or would have discov-

ered the idea except through plaintiff's proposal; hence, the "idea was novel" as far as defendant was concerned), and where substantial conflicting evidence exists as to the "novelty" of the idea under New York law, there seems to be at least a triable issue.

The majority's decision prematurely denies Murray a fair opportunity to establish his right to participate in the enormous wealth generated by *The Cosby Show.* Accordingly, I would reverse the district court judgment and remand the case for further consideration.