```
                        _____

                        No. 95-1608
                        No. 95-1747
                        _____
```

Paul A. Hurst, as Trustee for      *
American Classics, Inc.,            *
                                    *
      Plaintiff - Appellant/        *
      Cross Appellee,               *
                                    *
                                    *  Appeals from the United States
      v.                            *  District Court for the
                                    *  Western District of Missouri.
Dezer/Reyes Corporation;            *
Michael Dezer,                      *
                                    *
Defendants - Appellees/             *
      Cross Appellants.             *
                                    *

```
                        _____
```

                 Submitted:  November 13, 1995

                    Filed:  April 26, 1996
```
                        _____
```

Before McMILLIAN and LOKEN, Circuit Judges, and DUPLANTIER,[*] District
      Judge.
```
                        _____
```

LOKEN, Circuit Judge.


        In this diversity case governed by New York law, the trustee of
American Classics, Inc. ("ACI"), a defunct Missouri corporation, sued
Dezer/Reyes Corporation ("Dezer/Reyes") for breach of a Management Contract
and also asserted claims against Dezer/Reyes and its principal owner,
Michael Dezer, for quantum meruit and for conversion of ACI's intangible
property right to the name and trade dress of "Chevy's Diner and Bar" in
New York City.  After a second jury awarded ACI substantial quantum meruit
and conversion damages, the district court entered judgment on that
verdict, and both sides

_____

        *The HONORABLE ADRIAN G. DUPLANTIER, United States District
        Judge for the Eastern District of Louisiana, sitting by
        designation.

appeal. We affirm the jury's quantum meruit award against Dezer/Reyes, reverse the conversion and punitive damage awards, affirm the district court's dismissal of the claims against Michael Dezer, and remand for entry of an amended final judgment.

## I. Background.

On June 7, 1986, Dezer/Reyes and ACI entered into a Management Contract in which Dezer/Reyes agreed to build and own a "Chevy's Diner & Bar" in New York City, and ACI agreed to develop and manage the nightclub using ACI's established "Chevy's" concept. That concept featured a 1950s/early-1960s theme, decor, and music; buffet dining; a dance floor; and choreographed entertainment by the staff. In the Management Contract, ACI retained complete control over the New York operations, and Dezer/Reyes agreed to pay a percentage of its gross revenues as ACI's management fee. The agreement provided that, upon termination, Dezer/Reyes "shall immediately cease to operate the Business" and to use ACI's "trademark, service mark, tradename, logo or other proprietary mark . . . distinctive trade dress, forms, slogans, signs, uniforms, symbols or devices associated therewith." Dezer/Reyes built the New York nightclub, which opened in February 1987. ACI was paid fees under the Management Contract until March 1989.

In 1988, General Motors Corporation ("GM") sued ACI in an Illinois federal court, claiming unauthorized use of GM's "Chevy" trademark. In November 1988, after the court issued a permanent injunction in GM's favor, ACI and GM entered into a Settlement Agreement that recognized GM's ownership of the "Chevy" mark but permitted ACI to use the "Chevy's" name on exterior signs and advertising at its nightclubs until October 1989, and on interior materials and supplies for an additional four years.

On March 28, 1989, Dezer/Reyes and ACI entered into a new agreement. Without disclosing its settlement with GM, ACI granted

Dezer/Reyes a ten-year exclusive license to use ACI's "Proprietary Marks" to operate a "Chevy's Diner and Bar" in New York City in exchange for an immediate payment of $75,000. Paragraph 11 of this agreement terminated the 1986 Management Agreement, adding: "It is not the intent of the parties to have the termination of the Management Contract affect the conduct of the Business by [Dezer/Reyes] in any way, other than the cessation of the management obligations of [ACI]." Shortly thereafter, Dezer/Reyes learned of the GM litigation and the GM-ACI settlement agreement. Taking the position it had been defrauded, Dezer/Reyes stopped payment on its $75,000 check. Though it continued operating the New York "Chevy's" until the fall of 1990, and indeed hired one of ACI's employees to manage the nightclub, Dezer/Reyes made no further payments to ACI under either agreement.

ACI commenced this damage action in mid-1990. ACI's amended complaint sought compensatory damages for breach of the Management Contract or a recovery in quantum meruit, and compensatory and punitive damages for conversion of ACI's business concept. Dezer/Reyes counterclaimed for fraud. Prior to trial, the district court held the Management Contract unenforceable because ACI had no right to the "Chevy's" mark. The court submitted ACI's quantum meruit and conversion claims and Dezer/Reyes's fraud counterclaim to the jury, which rejected the counterclaim and awarded ACI $119,324.48 in quantum meruit damages and $496,667.50 in conversion damages against both Michael Dezer and Dezer/Reyes.

Following post-trial motions, the district court dismissed ACI's claims against Dezer personally because ACI had failed to pierce the Dezer/Reyes corporate veil. The court held that the conversion award against Dezer/Reyes was excessive and, when ACI refused to accept a remittitur, ordered a new trial. The second jury returned a verdict awarding ACI $46,000 in quantum meruit damages, $150,000 in conversion damages, and $500,000 in punitive damages. On appeal, ACI urges us to affirm the first jury's damage

awards against both defendants and to order a new trial on the issue of punitive damages. Dezer/Reyes urges us to reverse the adverse judgment on the second jury's verdict. Michael Dezer urges us to uphold his dismissal following the first trial.

## II. Quantum Meruit.

The parties spend little time debating the second jury's award of $46,000 in quantum meruit damages. Dezer/Reyes argues that there can be no recovery in quantum meruit because its relationship with ACI was governed by two express contracts. However, the district court held the Management Contract unenforceable because ACI's essential proprietary mark, "Chevy's," was invalid. The equitable doctrine of quantum meruit may properly be used to prevent unjust enrichment when a party has rendered valuable services under an invalid or unenforceable contract. See Farash v. Sykes Datatronics, Inc., 452 N.E.2d 1245, 1246-47 (N.Y. 1983); Taylor & Jennings, Inc. v. Bellino Bros. Constr. Co., 483 N.Y.S.2d 813, 815 (App. Div. 1984). Neither party questions the amount of the quantum meruit award; it must be affirmed.

## III. Conversion.

The parties devote most of their appellate attention to ACI's recovery for the tort of conversion. Conversion is the "denial or violation of the plaintiff's dominion, rights, or possession" of property. Sporn v. MCA Records, Inc., 462 N.Y.S.2d 413, 415 (Ct. App. 1983). Historically, only tangible property could be converted; in New York, as in most jurisdictions, there could be no conversion of "incorporeal species of property." Matzan v. Eastman Kodak Co., 521 N.Y.S.2d 917, 918 (App. Div. 1987). If this traditional doctrine applies, ACI's conversion claim clearly fails because Dezer/Reyes always owned the tangible assets of the New York nightclub. For example, in MBF Clearing Corp. v. Shine, 623 N.Y.S.2d 204, 206 (App. Div. 1995), the court held that, absent

-4-

wrongful dominion over physical assets, there could be no cause of action for converting a business's "time, assets, associations, employees' services and equipment."

The expanded attention given intangible and intellectual property rights in recent decades has produced theories for expanding the tort of conversion to include misappropriation of such intangibles. While cognizant of the trend, New York courts have, at most, cautiously embraced such theories. As the court said in Ippolito v. Lennon, 542 N.Y.S.2d 3, 6 (App. Div. 1989), "Even under an expanded definition of the tort, conversion is limited to those intangible property rights customarily merged in, or identified with, some document." That is the position taken in Restatement of Torts 2d § 242. It is, in our view, as far as the New York courts would expand the scope of conversion.

ACI did not base its conversion claim on intangible property rights customarily merged in a document. Rather, ACI claimed that defendants converted its business concept. ACI argues that it may assert that tort claim because it has a property right in the business concept that was confirmed in Two Pesos, Inc. v. Taco Cabana, Inc., 112 S. Ct. 2753 (1992). However, Two Pesos simply acknowledged that restaurant trade dress may be protected under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). ACI has no federal trademark rights and asserted no claim under the Lanham Act. Two Pesos does not define ACI's rights under New York law.

The district court concluded that "New York does recognize a cause of action for conversion of a tangible expression or implementation of an idea," citing Murray v. National Broadcasting Co., 844 F.2d 988 (2d Cir.), cert. denied, 488 U.S. 955 (1988). However, in Murray the Second Circuit affirmed dismissal of "state law claims for breach of implied contract, misappropriation, conversion, and unjust enrichment" based upon the district court's determination that plaintiff had no property interest because its

-5-

idea for a new television program was not novel. 844 F.2d at 994. <u>Murray</u> did not involve a dispute among the parties to a licensing arrangement. Therefore, it sheds no light on what causes of action may be appropriate here, and it certainly cannot override more specific New York cases defining the tort of conversion, such as <u>Ippolito</u> and <u>MBF Clearing Corp.</u>[1]

ACI licensed its business concept to Dezer/Reyes. The lynchpin of that license, the trademark "Chevy's," proved to be invalid. Claiming fraud, Dezer/Reyes refused to pay its licensor but continued reaping benefits from the licensed concept. ACI sued, complaining that Dezer/Reyes used the licensed intangibles without paying the bargained fees. This is fundamentally a contract dispute. Under New York law, "a tort claim will not arise where plaintiff is essentially seeking enforcement of the bargain." <u>In re Chateaugay Corp.</u>, 10 F.3d 944, 958 (2d Cir. 1993) (quotation omitted). The district court erred in submitting ACI's conversion claim to both juries.

### IV. Punitive Damages.

ACI's claim for punitive damages falls with its claim that defendants committed the tort of conversion. It is well-settled in New York that punitive damages are not available in an action for breach of contract or for quantum meruit unless defendants' conduct was actionable as an independent tort of a sufficiently egregious nature. <u>See</u> <u>New York Univ. v. Continental Ins. Co.</u>, No. 302, 1995 WL 761955, at *2 (N.Y., Dec. 27); <u>Sforza v. Health Ins. Plan of Greater NY, Inc.</u>, 619 N.Y.S.2d 734, 736 (App. Div. 1994). ACI has

---

[1]Moreover, if <u>Murray</u> did govern this action, we would conclude that a nightclub concept based upon a theme from the 1950s, such as "Chevy's," is not sufficiently novel and original to give rise to a protectable property interest. <u>See</u> <u>Paul v. Haley</u>, 588 N.Y.S.2d 897, 902-03 (App. Div. 1992); <u>Murray</u>, 844 F.2d at 992-93; <u>Ring v. Estee Lauder, Inc.</u>, 702 F. Supp. 76 (S.D.N.Y. 1988), <u>aff'd</u>, 874 F.2d 109 (2d Cir. 1989) (per curiam).

failed to satisfy either prong of this narrow exception to the general rule. Therefore, we reverse the second jury's award of punitive damages and reject ACI's contention that there should be a new trial on the issue of punitive damages.

## V. Claims Against Michael Dezer.

During the first trial, at the close of ACI's evidence and again at the close of all evidence, Michael Dezer filed written motions for judgment as a matter of law ("JAML"). Those motions stated in conclusory fashion: "Defendant moves the Court to instruct the jury that under the pleadings, the law, and the evidence, their verdict must be in favor of this defendant." Following the adverse jury verdict, the district court granted Dezer's renewed motion for JAML on the ground that ACI had contracted with Dezer/Reyes and had failed to "pierce the corporate veil" so as to impose liability on Dezer personally. ACI has preserved an appeal from that ruling.

ACI first argues that the district court's ruling was procedurally flawed. ACI posits that Dezer's conclusory pre-verdict motions failed to "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2). Therefore, Dezer's post-verdict JAML motion was improperly granted on a ground not preserved prior to the verdict. See Diercks v. Durham, 959 F.2d 710, 714 (8th Cir. 1992); 5A James W. Moore, Moore's Federal Practice ¶ 50.08 at 50-86 (2d ed. 1994). The district court acknowledged this principle but concluded that Dezer's pre-verdict motions sufficiently preserved his post-verdict attack on the sufficiency of ACI's evidence because the court had not permitted oral argument to flesh out the basis for the pre-verdict motions.

To apply the rule that a post-verdict JAML motion must be limited to grounds asserted prior to submission of the case to the

jury, we must know what grounds were fairly raised by the pre-verdict motions.  That is an issue committed to the district court's discretion. Exercise of that discretion must of course be informed by the purpose of the Rule 50(a)(2) requirement, namely, "that the motion be made before the case is submitted to the jury, so that the responding party may seek to correct any overlooked deficiencies in the proof."  Rule 50 Advisory Committee Notes to the 1991 Amendment to Subdivision (a).

Here, Dezer filed perfunctory written pre-verdict motions.  We discourage motions of this type and note that, had his post-verdict motion been denied, Dezer would likely have failed to preserve *any* JAML issue for appeal.  See <u>Jones Truck Lines, Inc. v. Argo</u>, 237 F.2d 649, 651-52 (8th Cir. 1956).  However, the district court construed the pre-verdict motions as adequate to challenge the sufficiency of ACI's evidence.  Because ACI makes no showing that it lacked fair notice of the veil-piercing issue or an opportunity to cure the deficiencies in its proof, we have no basis to conclude that the district court abused its discretion by considering the merits of Dezer's post-verdict JAML motion.

ACI next argues that the district court erred in holding that ACI must pierce the Dezer/Reyes corporate veil to recover damages from Dezer personally.  We have concluded that ACI has no cause of action for conversion.  Our focus now is on quantum meruit.                   A C I contracted with Dezer/Reyes.  ACI dealt with Dezer only in his capacity as an officer and shareholder of Dezer/Reyes.  Thus, ACI could not sue Dezer for breach of the Management Contract unless it could pierce that corporate veil.  <u>See, e.g.</u>, <u>New York Ass'n for Retarded Children, Inc. v. Keator</u>, 606 N.Y.S.2d 784, 785 (App. Div. 1993).  However, ACI correctly notes that "the mere existence of a written contract governing the same subject matter does not preclude [quantum meruit] recovery from non parties so long as the other requirements for quasi contracts are met."  <u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 754 F. Supp. 37, 40 (S.D.N.Y. 1991).

The key to any quantum meruit recovery from a non-contracting party such as Dezer is proof that he unjustly received and retained an independent benefit from the plaintiff's contractual services. See <u>Custer Builders v. Quaker Heritage, Inc.</u>, 344 N.Y.S.2d 606, 609 (App. Div. 1973). Here, ACI points only to financial benefits that accrued to Dezer from the Management Contract because Dezer/Reyes was a Subchapter S corporation for income tax purposes. Those are not independent benefits. They therefore provide no basis for imposing quantum meruit liability on Dezer personally when ACI agreed to do business with, and provided its contractual services to, a bona fide corporate entity, Dezer/Reyes. That the contracts proved to be unenforceable gives rise to a quantum meruit claim against the beneficiary of ACI's contract services, Dezer/Reyes, but provides no independent basis for such a claim against Dezer. Thus, the district court properly granted JAML in his favor.

## VI. Conclusion.

We have considered the additional issues raised in the parties' appellate briefs and conclude that each is without merit. The judgment of the district court is reversed and the case is remanded with instructions to enter an amended judgment (i) awarding ACI judgment against Dezer/Reyes in the amount of $46,000 on ACI's quantum meruit claim, and (ii) dismissing ACI's remaining claims with prejudice. Interest on this judgment under 28 U.S.C. § 1961 will run from the date judgment was entered in the district court, October 24, 1994. See Fed. R. App. P. 37.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-