**ALLIANCE SECURITY PRODUCTS, INC. and Alliance Security International, LLC, Plaintiffs–Appellants,**

v.

**FLEMING AND COMPANY, Pharmaceuticals, Defendant–Appellee.**

No. 07–0526–cv.

United States Court of Appeals, Second Circuit.

July 29, 2008.

---

Frank H. Penski (Erika J. Duthiers, Tamar Y. Duvdevani, of counsel), Nixon Peabody LLP, New York, NY, for Plaintiffs–Appellants.

William J. Hibsher (John D. Kircher, Adam J. Rosen of counsel), Bryan Cave LLP, New York, NY, for Defendant–Appellee.

Present: Hon. ROBERT A. KATZMANN, Hon. DEBRA ANN LIVINGSTON, Circuit Judges, Hon. ERIC N. VITALIANO, District Judge.[1]

## SUMMARY ORDER

Plaintiffs–Appellants Alliance Security Products, Inc., and Alliance Security International, LLC (collectively "Alliance") appeal from a judgment of the district court entered January 29, 2007, granting defendant-appellee Fleming & Company's motion for summary judgment dismissing the complaint, and denying plaintiffs' motion for a preliminary injunction. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

By way of background, the chemical compound potassium-iodide blocks the uptake of radioactive iodine by the thyroid gland, making it beneficial for people exposed to radiation, say after a nuclear disaster. In 2003, Alliance came to Fleming, which already manufactured and sold a raspberry-flavored potassium-iodide syrup called "PIMA" as a cough expectorant, and revealed its marketing plan to sell a liquid potassium-iodide solution in a palatable base, equipped with a dropper and a child-safe cap, in communities potentially under threat of a nuclear disaster due to terrorist attack. Although initially promising, negotiations between the parties soon broke down. Shortly thereafter, PIMA syrup was approved by the Food & Drug Administration ("FDA") for use as a radiation protectant, re-branded as "ThyroShield," and Fleming signed a contract to sell millions of bottles to the Department of Health and Human Services. Alliance brought this diversity action alleging under various contract- and tort-based theories of New York law that Fleming misappropriated Alliance's idea.

We review a district court's grant of summary judgment *de novo. NextG Networks of NY, Inc. v. City of New York,* 513 F.3d 49, 52 (2d Cir.2008). In essence, however, we affirm for substantially the reasons stated by the district court in its comprehensive memorandum opinion, dated January 26, 2007. *See Alliance Sec. Prods., Inc. v. Fleming Co.,* 471 F.Supp.2d 452 (S.D.N.Y.2007). As the district court noted, none of Alliance's ideas, considered separately or in the aggregate, are sufficiently novel to warrant protection under New York law. *See Murray v. Nat'l*

---

1. The Honorable Eric N. Vitaliano of the United States District Court for the Eastern District of New York, sitting by designation.

Broad. Co., 844 F.2d 988, 993–94 (2d Cir. 1988) (holding that "New York law requires that an idea be original or novel in order for it to be protected as property") (abrogated on other grounds by Nadel v. Play–by–Play Toys & Novelties, Inc., 208 F.3d 368, 376 (2d Cir.2000)). Alliance is correct in noting that we have held that under a tort-based misappropriation theory a plaintiff must prove novelty with respect to the world at large, but under a contract-based theory a plaintiff need only prove novelty to the defendant. Nadel, 208 F.3d at 376; see also Apfel v. Prudential–Bache Sec. Inc., 81 N.Y.2d 470, 477, 600 N.Y.S.2d 433, 616 N.E.2d 1095 (1993). In this case, however, as the district court found, Alliance's ideas were not novel either to the defendants or the rest of the world. When "an idea consists in essence of nothing more than a variation on a basic theme ... novelty cannot be found to exist." Murray, 844 F.2d at 993. See also Downey v. Gen. Foods Corp., 31 N.Y.2d 56, 61–62, 334 N.Y.S.2d 874, 286 N.E.2d 257 (1972). Here, Fleming had manufactured a liquid potassium-iodide with a raspberry flavor since 1968. Although Fleming marketed its syrup primarily as a cough expectorant in hospitals, potassium-iodide's effectiveness as a radiation protectant was general knowledge and was trumpeted by the FDA after the terrorist attacks of September 11, 2001. Furthermore, the record demonstrates that Fleming knew PIMA syrup could be used in this way by patients of all ages, as evidenced by the facts that it sent some of the product to assist victims of the Chernobyl disaster, that it contacted the Nuclear Regulatory Commission ("NRC") in 1998 about stockpiling the syrup in case of a nuclear disaster, and that it attempted to provide the syrup to the Commonwealth of Pennsylvania for the same purpose. Furthermore, Fleming had already hit on the idea of marketing the drug to children, as its letters to both the NRC and Pennsylvania

suggested that PIMA syrup is appropriate for all ages. Any notion that Alliance came up with the proper dosage for children is belied by the FDA's 2001 guidance, which spelled that out explicitly for potassium-iodide tablets, and the 2002 Physicians' Desk Reference, which did so for PIMA syrup specifically. The notion of obtaining FDA approval for the drug for a new use had also occurred to Fleming, as it had been in correspondence with the FDA about just that prior to meeting with Alliance. And that is essentially the sum total of what Alliance claims to have brought to the table in the parties' 2003 meeting.

It is true that Fleming's prior efforts had been sporadic and ultimately unsuccessful, and it is likely that it was the meeting with Alliance that opened Fleming's eyes to the possibilities of the strategy it had put on hold. But even if Alliance clued Fleming into the concept's profitability, that fact does not render the ideas themselves novel either to Fleming or the general public; rather, they constitute only a non-protected "clever or useful adaptation of existing knowledge." Educ. Sales Programs, Inc. v. Dreyfus Corp., 65 Misc.2d 412, 317 N.Y.S.2d 840, 844 (Sup. Ct.1970); see also Murray, 844 F.2d at 993 ("where, as here, an idea consists in essence of nothing more than a variation on a basic theme ... novelty cannot be found to exist"). As such, summary judgment is appropriate. Ferber v. Sterndent Corp., 51 N.Y.2d 782, 783–784, 433 N.Y.S.2d 85, 412 N.E.2d 1311 (1980) ("In order to successfully oppose a motion for summary judgment, plaintiff must come forward with some admissible proof that would require a trial of the material questions of fact on which his claim rests. Absent a showing of novelty, plaintiff's action to recover damages for illegal use of 'confidentially disclosed ideas' must fail as a matter of law.").

We have considered Alliance's remaining claims and consider them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED.**