OPINION OF THE COURT
Angela M. Mazzarelli, J.
Defendants, 900 U.S.A., Inc., an affiliate of Phone Programs Interactive, Inc., now known as Phone Programs U.S.A. Inc. (U.S.A.), and Phone Programs Interactive, Inc. (Interactive), move for summary judgment pursuant to CPLR 3212. For the reasons set forth below, the motion is granted.
In this action the plaintiff alleges that defendants misappro *629 priated its ideas for an interactive telephone game. Specifically, the complaint alleges six causes of action: (1) breach of contract; (2) breach of confidential and fiduciary relationship; (3) breach of implied covenant of good faith and fair dealing; (4) misappropriation of idea; (5) unjust enrichment; and (6) fraudulent misrepresentation.
On this motion defendants argue that the complaint must be dismissed as a matter of law because plaintiff’s idea, the Dead End Program (The Program), is neither novel nor original. Defendants contend that The Program was merely an improvement and mixture of known or preexisting ideas already in the public domain. Therefore, according to defendants, the entire complaint must be dismissed as all of the causes of action are premised on the allegation of the misappropriation of an unoriginal idea.
Plaintiff responds that New York law no longer requires a showing of novelty and originality as an element of a cause of action for misappropriation of an idea. Alternatively, plaintiff argues that the question of whether The Program was novel and original presents a factual issue which precludes the granting of summary judgment.
Interactive telephone games, a phenomenon developed in 1989, allow the caller to "interact” and participate in the game by touching the keypads on a touch-tone telephone. The plaintiff alleges that "from in or about June 1 through September 1, 1989, Stephen Horelick and Ken Cooper, on behalf of the plaintiff, conceptionalized [sic], developed and created” the Dead End Program. The complaint further alleges that Messrs. Horelick and Cooper "were first introduced to the defendants in connection with a proposed joint venture whereby the plaintiff would further develop the program with the defendants, and market and commercially exploit the program through the defendants’ '900’ interactive telephone network”. The first interactive game in the Dead End series was called "Drugs and Thugs”.
On September 27, 1989, Oasis Music, Inc. (Oasis) and U.S.A. entered into a confidentiality agreement, in which the defendants agreed to maintain the confidentiality of all materials relating to The Program. After the signing of the agreement, the plaintiff delivered materials relating to The Program to defendants. The plaintiff then, allegedly at the request of the defendants, continued to develop The Program. Sometime between December 1989 and spring 1990, defendant U.S.A. *630 informed the plaintiff that it was no longer interested in pursuing a joint venture with the plaintiff regarding The Program.
The plaintiff contends that the defendants incorporated some of its ideas from the Dead End Program into an interactive telephone game named Robocop 2. That game was produced pursuant to a license agreement with Creative Licensing Corporation (CLC) dated March 26, 1990, which granted defendant U.S.A. the exclusive right, license and privilege to the name, artwork, logo and characters for the movie, Robocop 2.
Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue (Rotuba Extruders v Ceppos, 46 NY2d 223), or where the issue is arguable (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395). To obtain summary judgment, the movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
The court’s analysis must begin with a determination of the correct legal standard under New York law to be applied to this particular misappropriation of idea case. In Apfel v Prudential-Bache Sec. (81 NY2d 470 [1993]) the Court of Appeals revisited the issue of how the law provides protection for an idea, which, due to its abstract nature, is difficult to define and to assign a value. Plaintiff argues that "[t]he Court of Appeals squarely held that the law of the State of New York does not require a showing of novelty in cases involving disclosure of ideas”. However, as defendants point out, the Apfel Court did not repudiate the long line of cases requiring novelty in certain situations. Rather, the Apfel Court merely clarified that novelty is not required in all cases.
Apfel (supra) held that when a seller and buyer enter into both a confidentiality agreement and a postdisclosure contract, the postdisclosure contract for the sale of an idea may be supported by adequate consideration even if the idea is not novel (Apfel v Prudential-Bache Sec., supra, at 478). However, if "the buyer and seller contract for disclosure of the idea with payment based on use, but no separate postdisclosure contract for use of the idea has been made” there is a problem in establishing "whether the idea the buyer was using was, in fact, the seller’s” (supra, at 477-478). Thus, in *631 this latter category of cases, the New York courts require "[a] showing of novelty, at least novelty as to the buyer” (supra, at 478). By requiring a showing of novelty, an otherwise intangible and amorphous idea is given "both the attributes of ownership necessary for a property-based claim and the value of the consideration — the disclosure — necessary for contract-based claims” (supra). The action before this court presents the second "distinct factual pattern” (supra, at 477) described in Apfel. Thus, the question becomes whether plaintiff has made a sufficient showing of novelty to preclude the granting of summary judgment.
Whether an idea is sufficiently novel or original to merit protection under New York law is a question amenable to summary disposition (Ring v Estee Lauder, 702 F Supp 76 [SD NY 1988], affd 874 F2d 109; Paul v Haley, 183 AD2d 44, lv denied 81 NY2d 707). For an idea to be susceptible to a claim of misappropriation, two elements must be established. First, a requisite legal relationship must exist between the parties, and second, the idea must be novel and concrete (McGhan v Ebersol, 608 F Supp 277 [SD NY 1985]; see also, Vantage Point v Parker Bros., 529 F Supp 1204 [ED NY 1981], affd 697 F2d 301). The legal relationship between the plaintiff and defendant may be either a fiduciary relationship, or based on an express contract, an implied-in-fact contract, or a quasi-contract (McGhan v Ebersol, supra). As there is a confidentiality agreement between the parties here, there is no dispute that the first element has been met. This leaves the question of whether the ideas suggested by the plaintiff with respect to the Dead End Program were novel or original, and not merely a clever or useful adaptation of existing knowledge (Educational Sales Programs v Dreyfus Corp., 65 Misc 2d 412 [Sup Ct, NY County 1970]).
While ideas which reflect "genuine novelty and invention” are fully protected against unauthorized use (Murray v National Broadcasting Co., 844 F2d 988, 992, cert denied 488 US 955), ideas which are not novel "are in the public domain and may freely be used by anyone with impunity” (Graham Prods. v National Broadcasting Co., 75 Misc 2d 334, 337 [Sup Ct, NY County 1973]; Paul v Haley, supra). An idea which is a variation on a basic theme will not support a finding of novelty (Ring v Estee Lauder, supra, at 78; Surplus Equip. v Xerox Corp., 120 AD2d 582, lv denied 68 NY2d 606). "Improvement of standard technique or quality, the judicious use of existing means, or the mixture of known ingredients in some *632 what different proportions — all the variations on a basic theme — partake more of the nature of elaboration and renovation than of innovation” (Educational Sales Programs v Dreyfus Corp., supra, at 416). A plaintiff cannot rest on mere assertions of novelty and originality, but must, instead, "demonstrate some basis for those [ideas]” (Women Golfer v Meredith Corp., 792 F Supp 211, 214 [SD NY 1992]; see also, Paul v Haley, supra).
Here, the plaintiff claims that its program consisted of a variety of novel ideas. Stephen Horelick, president of Oasis, contends that the interactive telephone games prior to plaintiffs program were trivia based, in that "[t]hey limited the degree to which the caller could become engaged in the program, since they were based on true or false or multiple choice questions, requiring the caller to guess facts gleaned from motion pictures, movie characters or celebrities lives”. It is alleged that "[a]s of September 1989 * * * the 'Dead End’ program was more creative and involving than any of the programs then publicly available in the interactive telephone market”. Felt, former vice-president and director of marketing of Telerx Marketing, Inc., further alleges that, "[e]very other program on the market at that point seemed to limit the caller to one or more wrong answers (which terminated the game) or one right answer which allowed the caller to proceed in a linear plot line”, whereas the Dead End Program utilized "skip logic patterns”. Skip logic patterns allow "a caller * * * to make a choice (through pressing a number on the telephone touch-tone key pad), and * * * to either terminate the game or [to] * * * proceed on one of several evolving plot lines available in the program during any particular telephone call”. "Thus, the caller [is] not limited to choosing one right answer or wrong answer, but [can] make a choice which would lead into different patterns (adventures or locations) depending on which choices the caller made”. Horelick further contends that the Dead End Program was the first to introduce lifelike sound effects to enhance the caller’s feeling that he or she is a character in the story.
Frederick Weiner, vice-president, chief executive officer and secretary of the corporate defendants, alleges "that there was nothing novel or original about having such non-trivia telephone adventure interactive games at that time”. In support of his contention, Weiner submits copies of advertisements contained in the October 1989 issue of "Games Workshop: White Dwarf’ and an article entitled It’s a Telephonic Bazaar *633 from the July 16, 1989 Newsday business section, which refers to a local New York pay per call interactive "Dungeons and Dragons-like game”.
These submissions demonstrate that at the time plaintiff submitted its proposal to the defendants, non-trivia-based interactive games already existed, and that the concept of sound effects was already introduced and operating in interactive games. For example, the advertisement for "War of Wizards” advises the potential caller that it can "hear thunderbolts crash, fireballs erupt, monsters roar, and hellhounds snarl as you hurl them at your opponent”. Therefore, the plaintiff’s "ideas” of non-trivia-based interactive games and sound effects lack novelty.
As for the skip logic idea, the plaintiff fails to demonstrate that it was a novel idea and not a mere adaptation or natural progression of the concept of linear plot sequence which was in existence at the time of its proposal. It appears that the skip logic idea consists of a variation on a basic theme, i.e., the linear plot sequence (see, Murray v National Broadcasting Co., 844 F2d 988, supra), and as such, will not support a finding of novelty (Ring v Estee Lauder, 702 F Supp 77, supra). In any event, Weiner contends that in the Robocop 2 game, "the caller always has the same three choices ('fire your weapon’, 'chase’, or 'draw your weapon’), all of which are the same in any given situation and at all levels”, that "the choice made by the caller does not determine the plot sequence”, and that "there is a strict predetermined linear plot development, not skip logic progression”.
In comparing the flow charts from the Dead End Program and the Robocop 2 game, Robocop 2 appears to be a linear plot sequence and not a skip logic progression as claimed by the plaintiff. In the Dead End Program, more than one choice could be correct, in which event the caller continues to move into a plot sequence dictated by that choice. However, in the Robocop 2 game, there is one correct choice which continues the game in a linear fashion, i.e., one predetermined plot. Thus, it does not appear that plaintiff’s "idea” of "skip logic progression” was utilized by defendants in Robocop 2.
Horelick further contends that the plaintiff "couched the Dead End Program within an anti-drug story” and that the utilization of such theme in a telephone interactive game was a novel idea at the time that the plaintiff proposed it. He contends that "[i]n 1989, all of the interactive telephone *634 programs that were then available were trivia based and were either used to market a particular product or were used in connection with entertainment industry non-fictional or fictional characters or personalities (Star Trek, Indiana Jones, LL Cool J, etc.)”. The plaintiff contends that the defendants incorporated its idea, i.e., an antidrug, anticrime message, in the Robocop 2 game.
Weiner contends that the antidrug message in the Robocop 2 game was included at the "explicit request of CLC” and that the licensing agreement provides that the defendant "include an anti-drug message on the Licensed Service [Robocop 2 game] subject to Licensor’s approval”. He further contends that such "an anti-drug theme and message was so commonplace that in May 1989 an anti-drug film was produced by an unaffiliated party entitled 'Dead End’ ”.
The anticrime/antidrug theme is not a novel idea, and has and will continue to be a constant theme in the public domain. As demonstrated by the defendants, such issues are frequently raised by our elected officials and are constantly present in the media. The mere fact that an antidrug/anticrime theme may not have been a part of the telephone interactive games prior to the plaintiff’s proposal does not necessarily mean that such an idea is itself novel (see, Murray v National Broadcasting Co., supra). Moreover, the description of the Dead End Program as explained in the plaintiff’s proposal provides as follows: "Dead End is a telecommunications based anti-crime, anti-drug adventure-game series. Playing Dead End combines the action of 'Miami Vice’ with the interactive structure of computer games. It’s a 'Dungeon and Dragons’ type adventure enhanced by exciting story telling, original music and 'real’ sound effects with plots that reflect and elaborate 'real world’ media events.” Thus, the plaintiff acknowledges that its program is based on ideas and concepts already in the public domain, and has failed to demonstrate the originality or novelty of its theme.
Horelick further contends that the plaintiff’s program incorporates a novel use of a PIN identification number in that it assigns a PIN identification number to the caller, which helps track the caller’s previous attempt at playing the game.
In opposition, Weiner first alleges that PIN numbers as identification were already widespread. He next alleges that "in the interactive telephone game community, anti-gambling laws require a free (i.e., 800 number) means of entry to play *635 the game as an alternate to a paid (i.e., 900 number) entry” and "[i]t was then industry standard to use PIN number identification in connection with such a free entry”. He contends that Robocop 2 utilized its PIN identification number to permit a free entry to the game.
Plaintiff’s idea for utilizing PIN numbers as a source of identifying callers, and tracking previous attempts at the game, is clearly an adaptation of existing knowledge in the public domain and, therefore, lacks "genuine novelty and invention” (Educational Sales Programs v Dreyfus Corp., 65 Misc 2d 412, 416, supra; Murray v National Broadcasting Co., 844 F2d 988, supra). Moreover, pursuant to Robocop 2’s rules, the purpose of the PIN identification numbers was not to track the caller’s previous attempts at playing the game as in the Dead End Program, but, instead, utilizes them as prizes for those entering its contest and was valid only for one try. Thus, the plaintiff has failed to demonstrate that its "PIN identification number idea” is novel and original within the meaning of New York law.
In summary, the plaintiff has failed to demonstrate that its ideas in the Dead End Program were novel and original. Accordingly, the defendants’ motion for summary judgment pursuant to CPLR 3212 is granted. It is
Ordered that the motion for summary judgment is granted and the complaint is dismissed.