**M.H. SEGAN LIMITED PARTNERSHIP,**
Plaintiff,

v.

**HASBRO, INC., Defendant.**

No. 95 CIV. 0583 (DLC).

United States District Court,
S.D. New York.

May 2, 1996.

---

Lawrence M. Segan, New York City, Martin B. Pavane, Cohen, Pontani, Lieberman & Pavane, New York City, for Plaintiff.

Kim J. Landsman, Margaret R. Sparks, Patterson, Belknap, Webb & Tyler, L.L.P., New York City, for Defendant.

COTE, District Judge:

Plaintiff M.H. Segan Limited Partnership ("Segan") filed this action on January 26, 1995, alleging copyright infringement, fraudulent inducement, and breach of contract. Segan is a Massachusetts limited partnership in the business of inventing toys and other consumer products. Defendant Hasbro, Inc. ("Hasbro"), is a Rhode Island corporation and a well-known designer of consumer products, including toys. Jurisdiction is based on 28 U.S.C. §§ 1331, 1332 and 1338(a). Hasbro moves for summary judgment to dismiss all of plaintiff's claims. For the reasons set forth below, defendant's motion is denied in part and granted in part.

## BACKGROUND

This action arises out of plaintiff's submission of three toy ideas to Hasbro. The first toy idea, Frankenstuff,[1] was first shown on December 19, 1986 to George Dunsay, one of Hasbro's employees. It was immediately rejected. Frankenstuff was again shown to Hasbro on April 18, 1991, this time to John Hall, Vice–President of Research and Development for Playskool, a division of Hasbro. According to the "Inventor Review Record," which was completed by Hasbro at the time plaintiff submitted Frankenstuff, Hall decided to "Hold" the drawings apparently for further evaluation. Plaintiff's drawings were rejected and returned to the plaintiff approximately two months later.

The second toy concept, Super Slick Paint Shop, was shown to Playskool on October 2, 1991; according to the Inventor Review Record, it was rejected. It was again shown to Playskool, together with plaintiff's third toy concept, Manicure Shop, on December 4, 1991; this time, Playskool decided to "Hold"

on to plaintiff's Super Slick Paint Shop. Manicure Shop was rejected.[2]

Plaintiff signed a "Confidential Disclosure Waiver" form ("Waiver") on June 13, 1990. It states, in relevant part:

Inventor has been advised by Hasbro's representatives that Hasbro is willing to consider [the inventor's] Submissions, but that because of the large number of inventions and ideas, both old and new, which Hasbro has itself developed or had suggested to it by other third parties, the possibility exists that some of such inventions and ideas are similar to those Submissions which Inventor might disclose to Hasbro. Inventor therefore agrees to and accepts, and asks Hasbro to consider all Submissions made by Inventor in accordance with, the following conditions:

1. All Submissions are made by Inventor on a voluntary and unsolicited basis.

2. *No confidential relationship is to be established by such Submission* or implied from consideration of the submitted material, and the material is not submitted "in confidence." (Confidential relationships have been held to create obligations and liabilities which are beyond those that Hasbro is willing to assume.)

3. *No obligation of any kind is assumed by,* nor may be implied against *Hasbro* and/or its subsidiaries unless or *until a formal written contract between the parties is signed,* and then the obligations will be only as set forth by the terms of such contract.

4. *All of Inventor's rights* and remedies arising out of Inventor Submission(s) to Hasbro *shall be limited to any rights* and remedies Inventor is *accorded under United States Patent and Copyright Laws.* All other claims of whatever nature arising out of In-

---

1. There are four separate drawings illustrating Frankenstuff. Three were developed in 1986, and one was developed in 1991. Although there are some minor differences between the drawings, for the sake of brevity the Court will refer to all of these drawings collectively as "Frankenstuff".

2. It is unclear from the parties' submissions whether or when Super Slick Paint Shop was rejected.

ventor's Submission to Hasbro are hereby waived.

. . . . .

The Submissions made by Inventor and governed hereunder are as described on the "Inventor Review Record," signed and dated by Inventor.

(Emphasis supplied.)

According to the plaintiff, at the 1993 Toy Fair defendant introduced Big Frank, a toy plaintiff alleges was copied from Frankenstuff. Plaintiff also claims that Hasbro's Monster Truck Mold N' Mash, which, according to the plaintiff, was introduced at the 1994 Toy Fair, was copied from plaintiff's Super Slick Paint Shop. Finally, according to the plaintiff, at the 1995 Toy Fair defendant introduced Fantastic Fingernails, a toy that plaintiff alleges was copied from Manicure Shop.

Because plaintiff's claim for copyright infringement applies solely to Frankenstuff, the Court will describe plaintiff's Frankenstuff and defendant's Big Frank in some detail. Frankenstuff is depicted as a "plush", "soft" doll approximately 22 inches tall with two sets of zippers so that a child's small play things can be stored in the head or chest. It has green skin; a lavender (or purple), loose-fitting robe; large hands with red-painted fingernails and either four or five fingers; short legs; large, brown shoes (or large, white tennis shoes) with thick soles; a zipper across its forehead and another zipper across its chest; a large, red heart with two gears (one green and the smaller one yellow) resembling the mechanism of a clock inside the chest cavity; and various objects that might be stored in the head or chest compartments, such as a wrench, a gear, a telephone, a garbage can and animals (spider, frog, worm, mouse, bats), among other things. The doll's head is large (in proportion to the rest of its body) and rectangular in shape; it is flat at the top and has dark hair that is unevenly cut. Its facial features are baby-like—a small, flat and round nose, round cheeks, small ears, small eyes that are dark and somewhat far apart. It has a large, smiling mouth with closed lips that, in some pictures, tend to curve slightly upward on one side. The doll has a very short, thick neck with bolts on each side. Plaintiff holds Certificates of Registration for the Frankenstuff design.

Big Frank is approximately sixteen inches tall and constructed out of hard (or semi-hard) plastic. It has green skin, black hair, and a large upper body, with wide shoulders; by contrast, its legs are short. Its arms and legs are stocky, and the hands and feet are disproportionately large. There are silver-colored chains around its wrists, and one silver-colored bolt on each upper arm. It wears a bright orange suit with seams that look stitched together and a patch stitched over the right knee. Underneath the coat, there is what appears to be a purple T–Shirt. It has large, black boots with thick soles and a number of screws.

Big Frank's face is essentially that of a young boy, except that certain features are exaggerated and reminiscent of the monster Frankenstein. For example, it has a flat head, a large forehead, and a prominent brow. The eyes are green with red LED (Light Emitting Diode) lights instead of pupils. The cheeks are chubby, and the nose is flat, small and round. Its smile appears to curve up slightly to one side, but this effect is created by the fact that Big Frank's lower lip is bigger on one side of the mouth. The ears are small and stick out. It has no neck.

Big Frank's head and chest open; the top of the head opens toward the back, lifting the hair and leaving Big Frank's forehead in place. Inside the head there is a space to hold three tools. The chest has hinged doors, fastened with a bolt, that swing open to reveal a panel inside with gears and other objects that a child can manipulate to, among other things, create sounds. There are two gears, the larger one is blue and above the smaller one, which is yellow. By turning the gears, the child can change the picture in an adjacent window. The picture can be a broken bone or gear, which means that Big Frank needs fixing, or a whole bone or gear, which indicates that Big Frank is fixed. The other mechanisms in its chest make Big Frank talk. What it says depends on whether he needs fixing. If the bone or gear in the window is broken, then, when an "electri-

cal" switch is pressed against the button underneath, it says, "Uh, fix me." If the gear or bone is whole, the same switch makes it say "Thank you." Similarly, there is a fuel gauge window with a button underneath that, when pressed, makes it say "Uh, Fix me" when the bone or gear is broken. If the bone or gear is not broken, Big Frank makes other sounds and says "Mmm, good." Finally, the red heart makes a pumping sound when pressed and it says "I'm alive!" if the bone or gear is not broken. If the bone or gear is broken, pressing the heart makes it say "Uh, Fix me." When fixed, the eyes flash red in synchrony with the voice.

## COPYRIGHT INFRINGEMENT

■ To succeed in its copyright infringement claim, plaintiff must demonstrate: (1) ownership of a valid copyright; (2) that the defendant has actually copied the plaintiff's work; and (3) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's. *See Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995); *see also Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122–23 (2d Cir.1994).

### 1. Ownership of Valid Copyright

■ A certificate of copyright registration made before or within five years after first publication of plaintiff's work is *prima facie* proof of plaintiff's ownership and validity of its copyright. 17 U.S.C. § 410(c) (1988);[3] *see Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985). A timely issued certificate, however, creates only a rebuttable presumption of copyright validity, and defendant may offer

evidentiary proof casting doubt on the copyright's validity. *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980).

■ Defendant argues that plaintiff's copyright is invalid because Frankenstuff is a derivative work without a license from MCA/Universal Merchandising, Inc. ("MCA"), which owns the copyright to the visual image of Frankenstein from its movie by the same name. MCA has filed an affidavit in support of defendant's motion which indicates that it considers Frankenstuff to be a derivative work and that it has not given any permission to Segan to make such a derivative work. That plaintiff lacks authorization from MCA is not disputed.[4]

■ Section 101 of the Copyright Act defines a derivative work as:

*a work based upon one or more preexisting works, such as a* translation, musical arrangement, dramatization, fictionalization, *motion picture version,* sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101 (emphasis supplied). Not just any work that is based on a pre-existing work, however, is a "derivative" work entitled to copyright protection. A derivative work must "borrow[ ] substantially from existing works." *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 34 (2d Cir.1982). Thus,

---

3. 17 U.S.C. § 410(c) provides:

 In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

4. Nonetheless, at the time Segan showed its drawings of Frankenstuff to Hasbro, both parties no doubt assumed that Hasbro would obtain a license from MCA should Hasbro decide to pro-

ceed with production of a Frankenstuff toy. Indeed, that is what Hasbro chose to do when it created Big Frank. *Cf. Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 34 n. 6 (2d Cir.1982) (retroactive ratification by copyright owner of underlying work may be shown to uphold copyright in derivative work); *JBJ Fabrics, Inc. v. Brylane*, 714 F.Supp. 107, 110 (S.D.N.Y.1989) (copyright held by creator of derivative work not necessarily invalid because a license from copyright owner of underlying work can be obtained even at time of litigation).

A work is not derivative unless it has *substantially* copied from a prior work.... [A] work will be considered a derivative work *only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work.* It is saved from being an infringing work only because the borrowed or copied material was taken with the consent of the copyright owner of the prior work, or because the prior work has entered the public domain.

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 3.01, at 3–3 (1995) (*"Nimmer on Copyright"*) (first emphasis in original). *See also, Eden Toys*, 697 F.2d at 34 (citing *United States v. Taxe*, 540 F.2d 961, 965 n. 2 (9th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977) (quoting *Nimmer on Copyright*)). *Accord Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985) (work must infringe underlying work to be derivative); *Peter Pan Fabrics, Inc. v. Rosstex Fabrics, Inc.*, 733 F.Supp. 174, 177 (S.D.N.Y.1990) (quoting *Nimmer on Copyright*). A copyright owner has the exclusive right to prepare derivative works. *See* 17 U.S.C. § 106(2).

The Court must, therefore, decide whether Frankenstuff is a derivative work.[5] Because Segan does not have MCA's authorization, and Frankenstein is not in the public domain, Segan's copyright in Frankenstuff would be invalid if it were a derivative work based on MCA's Frankenstein. *See* 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright or right of the author."). In order to decide whether Frankenstuff is a derivative work, the Court must decide whether Frankenstuff infringes MCA's copyright in Frankenstein.

The standard for copyright infringement is whether the defendant's work is "substantially similar" to the underlying copyrighted work. *See generally* 1 *Nimmer on Copyright* § 3.06, at 3–34.5 & n. 2 (derivative work's unauthorized incorporation of preexisting copyrighted work must satisfy substantial similarity test to amount to infringement). In determining whether plaintiff's Frankenstuff infringes MCA's copyright, the Court must apply the "ordinary observer" test. Under this test, the Court must determine

whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."

*Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 141 (2d Cir.1992) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960)). *Accord Fisher–Price*, 25 F.3d at 123. In making this judgment, what is at stake is the similarity of expression and not the extent of protection to an idea. *See Durham*, 630 F.2d at 912–13 (applying substantial similarity test to toys). In conducting this fact-intensive inquiry, the Court must compare the works' " 'total concept and feel.' " *Knitwaves*, 71 F.3d at 1003. Although in some ways the aesthetic appeal between Frankenstuff and Frankenstein is quite different—one is playful and friendly, the other is forbidding and scary—Frankenstuff shares many of Frankenstein's most memorable or prominent features. Indeed, its very purpose is to evoke Frankenstein. Segan aptly described Frankenstuff to Hasbro in 1986 "as a somewhat friendly looking juvenile Frankenstein's monster whose chest and head can be zipped open to reveal all kinds of interesting and fun toys and goodies." However,

[s]tirring one's memory of a copyrighted character is not the same as appearing to

---

5. Hasbro urges this Court to find that plaintiff in its certificate of registration has admitted that Frankenstuff is a derivative work. Although plaintiff did, in fact, complete a section of the certificate of registration titled "Derivative Work or Compilation," plaintiff qualified this by stating that Frankenstuff is "[l]oosely based on Frankenstein character from 1931 movie entitled 'Frankenstein.' " At oral argument, plaintiff's counsel represented to the Court that this section was completed out of "an abundance of caution" and did not represent an admission on the part of plaintiff. For purposes of this motion, the Court does not find an admission on the part of plaintiff.

**520**

be substantially similar to that character, and only the latter is infringement.

*Warner Bros. v. American Broadcasting Cos.*, 720 F.2d 231, 242 (2d Cir.1983).[6] Therefore, I find there is an issue of fact with respect to this issue that precludes summary judgment.

### 2. Actual Copying

Although Hasbro does not admit actually copying Frankenstuff,[7] it has chosen not to contest this issue for the purposes of this motion and, therefore, this issue will not be addressed by the Court.

### 3. Substantial Similarity

■ Even if at trial plaintiff proves that Frankenstuff does not infringe Frankenstein (*i.e.*, it is not an unlawful derivative work), and that there was actual copying on the part of Hasbro, plaintiff must show "illegality." As the Second Circuit puts it, "Parrotry does not always mean piracy." *Fisher–Price*, 25 F.3d at 123. The issue is whether an ordinary observer would find there exists a substantial similarity between the protectible elements of Frankenstuff and Big Frank. When a work contains both protectible and unprotectible elements, the Second Circuit has described this analysis as a more discerning ordinary observer test. *See Fisher–Price*, 25 F.3d at 123 (citing *Laureyssens*, 964 F.2d at 141). This test requires the Court to "exclude comparison of the unprotectible elements from [its] application of the ordinary observer test," *id.*, and ask "whether the *protectible elements, standing alone, are substantially similar.*" *Knitwaves*, 71 F.3d at 1002 (citing cases) (emphasis in original). In other words,

"[T]he plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea. The means of expression are the 'artistic' aspects of a work; the 'mechanical' or 'utilitarian' features are not protectible."

*Knitwaves*, 71 F.3d at 1002 (quoting *Fisher–Price*, 25 F.3d at 123 (citations omitted)).

According to Hasbro, the "more discerning" ordinary observer test requires this Court to exclude from its substantial similarity analysis all of those features associated with MCA's Frankenstein: green skin, the bolts on the sides of its neck, strongly defined brow, flattened and square-shaped head with a large forehead and short-cropped hair, oversized hands with sutures around the wrists, sleeves that stop short of the wrists, and, finally, oversized boots. Without these elements, Hasbro concludes, Frankenstuff is just "stuff", such that no substantial similarity between Frankenstuff and Big Frank would remain as a matter of law.

■ The Court, however, disagrees with Hasbro's understanding of the more discerning ordinary observer test. Although the test requires that the Court exclude unprotectible ideas, such as the idea of a boyish Frankenstein that opens to store toys,[8] it must examine the "total concept and feel" of the executed works. *See Knitwaves*, 71 F.3d at 1002–03. For example, the Second Circuit in *Knitwaves* included consideration of the ordinary background stripes of plaintiff's sweater, as well as the concededly distinctive arrangement of leaves and squirrels against this background, in its application of the more discerning ordinary observer test.[9] *Id.*

---

**6.** Indeed, Hasbro's argument is similar to the plaintiffs' contention in *Warner Bros.* that, because the defendants' "Greatest American Hero" character included the "indicia" of plaintiffs' Superman, it, therefore, was an infringing work. The Second Circuit upheld the lower court's entry of summary judgment for the defendants because "[t]he *total perception* of [defendants' character] is not substantially similar to that of Superman." *Warner Bros.*, 720 F.2d at 243 (emphasis supplied).

**7.** Hasbro has submitted declarations from two of its employees involved in the design of Big Frank which state that Big Frank "was developed inter-

nally at Hasbro with no use of any material or idea from an outside inventor."

**8.** Thus, the idea of a flat-to-cube puzzle is unprotectible, but its expression—*viz.*, the shape (or design)—is protectible and part of the more discerning ordinary observer test. *See Laureyssens*, 964 F.2d at 141.

**9.** Indeed, it is worth noting that the striped background of the sweaters in *Knitwaves* contributed substantially to the Second Circuit's "overwhelming impression" that the defendant's design infringed that of the plaintiff's. *See Knitwaves*, 71 F.3d at 1004–05 & n. 5.

at 1003 & n. 1. Through *Knitwaves,* the Second Circuit has recently reconfirmed that the more discerning ordinary observer test is not an invitation to dissect a work into its constituent elements or features. The works as a whole must be compared to each other. After all,

> a work may be copyrightable even though it is entirely a combination of unprotectible elements. What is protectible then is "the author's original contributions"—the original way in which the author has "selected, coordinated, and arranged" the elements of his or her work.

*Id.* at 1003–04 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 350, 358, 111 S.Ct. 1282, 1290, 1294, 113 L.Ed.2d 358 (1991) (citations omitted)).

Moreover, Hasbro (or, for that matter, MCA) could not, at any rate, lay claim to each one of the Frankenstein-like features cited above standing by itself. For example, MCA could not claim that every doll with short-cropped hair or green skin or oversized hands, etc., is derived from Frankenstein. *Cf. Fisher–Price,* 25 F.3d at 121 (dolls with "disproportionately large limbs and heads"). Furthermore, in light of the fact that the substantial similarity issue will not be reached unless the trier of fact concludes that Frankenstuff does not infringe Frankenstein, it would be inappropriate to exclude such features. Put another way, in asking the Court to exclude consideration of the features associated with Frankenstein with respect to the issue of substantial similarity, Hasbro presumes that Frankenstuff infringes on Frankenstein. If an infringement exists, however, the plaintiff will be unable to prove it holds a valid copyright and the issue

of similarity between Frankenstuff and Big Frank will not be reached. The Court, therefore, concludes that should the trier of fact reach the substantial similarity issue at trial, it is entitled to compare Frankenstuff and Big Frank in their entirety.[10]

Hasbro insists vigorously that no reasonable trier of fact would find substantial similarity. I conclude, however, that a material issue of fact precludes entering summary judgment against the plaintiff. As in *Fisher–Price,* the facial features of the two toys—the eyes, nose, mouth, and overall facial expression of these baby versions of Frankenstein—are remarkably similar. *See Fisher–Price,* 25 F.3d at 124. Both Frankenstuff and Big Frank have similar eyes, a small, flat and round nose, puffy cheeks, and in one of plaintiff's drawings, nearly identical smiles. In addition, both toys have green skin, enlarged hands, a large, red heart and two gears inside their chests. In conclusion, I find that a reasonable jury could find that the two works share the same "total concept and feel." Summary judgment on the issue of substantial similarity between Big Frank and Frankenstuff is, therefore, inappropriate.[11]

## CHOICE OF LAW

Before analyzing plaintiff's state-law claims, the Court must first address the threshold issue of choice of law. Both parties assume, without argument, that New York law governs plaintiff's state-law claims. Whether this Court's jurisdiction over such claims is based on its diversity or supplemental jurisdiction, it must at any rate apply the choice of law rules of the forum state—New

---

**10.** In the context of "character" infringement, for example, the Second Circuit has written:

> A character is an *aggregation* of the particular talents and traits his creator selected for him. *That each one may be an idea does not diminish the expressive aspect of the combination.* But just as similarity cannot be rejected by isolating as an idea each characteristic the characters have in common, it cannot be found when the *total perception of all the ideas as expressed in each character* is fundamentally different. *Warner Bros.,* 720 F.2d at 243 (emphasis supplied). The analogy is appropriate since Hasbro has argued in its brief and at oral argument that

Segan improperly copied character elements of Frankenstein.

**11.** The parties spent considerable effort debating the relevance of Frankenstuff's "soft" as opposed to "hard" features. It is well established, however, that "[i]n copyright law the medium is not the message, and a change in medium does not preclude infringement." *Rogers v. Koons,* 751 F.Supp. 474, 477 (S.D.N.Y.1990), *aff'd,* 960 F.2d 301 (2d Cir.), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). *See also Durham,* 630 F.2d at 910 (plastic reproduction of Disney characters does not preclude finding of infringement).

York. *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir.1989).

With respect to contract claims, choice of law issues are resolved in New York by an "interest analysis," whereby " 'the law of the jurisdiction having the greatest interest in the litigation' controls." *Wm. Passalacqua Builders v. Resnick Developers*, 933 F.2d 131, 137 (2d Cir.1991) (citing *Intercontinental Planning Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969)). Thus, the Court should consider the following factors:

> the place of (1) contracting, (2) negotiation of the contract, (3) performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

*Id.* (citing *State Trading v. Assuranceforeningen Skuld*, 921 F.2d 409, 417 (2d Cir.1990); Restatement (Second) of Conflict of Laws § 188(2) (1971)). In New York, moreover, if the parties support their respective legal contentions by relying solely on New York law, and in the absence of a strong countervailing public policy, the Court may consider the parties' preference as relevant and apply New York law to the contract claims. *Id.* (citing *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984)).

According to the plaintiff, the Waiver was signed at Hasbro's New York offices. Further, although the plaintiff is a partnership organized under Massachusetts law, the place of business of the entity with which Hasbro signed the Waiver—M.H. Segan & Company—is New York.[12] Finally, both parties rely exclusively on New York law. I conclude that under these facts, a New York court would apply New York law to plaintiff's contract claims.[13]

With respect to tort actions such as plaintiff's fraudulent inducement claims, New York courts look to the law of the jurisdiction having the greatest interest in the litigation. *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 94–95, 480 N.E.2d 679, 683–85 (1985). The Court must distinguish between "rules regulating conduct and rules governing loss allocation. Generally, when the laws in conflict are conduct regulating, the law of the locus jurisdiction applies." *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (citing *Schultz*, 491 N.Y.S.2d at 95–96, 480 N.E.2d at 684–86). Because the law of fraudulent misrepresentation regulates conduct, the Court should look to the law of the "locus" jurisdiction. Whether in a fraud action the locus of the fraud is the place of injury—generally, the domicile or place of business of the injured party, *see, e.g., Rosenberg v. Pillsbury Co.*, 718 F.Supp. 1146, 1150 (S.D.N.Y.1989); *accord Plymack v. Copley Pharmaceutical, Inc.*, 1995 WL 606272, at *4 (S.D.N.Y. Oct. 12, 1995) (Not Reported in F.Supp.) (citing *Rosenberg*)—or, rather, the place where the fraudulent conduct took place, *see Sussman v. Bank of Israel*, 801 F.Supp. 1068, 1075 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir.1993) ("the place where the victim of fraud or negligence suffered economic loss as less significant for choice of law purposes than the law of the place by which the defendant's conduct is evaluated"), the fraud at issue here must be governed by New York law. The plaintiff's predecessor had its place of business in New York, and the allegedly fraudulent misrepresentations also took place in New York.

### IMPLIED CONTRACT

Segan's implied contract claims assert that the circumstances surrounding Segan's disclosure to Hasbro of the three toy concepts

12. According to the Complaint, plaintiff is "the successor to all the rights and liabilities of M.H. Segan & Company." It appears that plaintiff also has business offices in New York.

13. As will be seen below, the Court must decide plaintiff's breach of implied contract claim involving plaintiff's pre-Waiver submission of Frankenstuff to Hasbro in December 1986. It is unclear from the parties' submissions whether the events surrounding this submission took place in New York or elsewhere. In light of this uncertainty, and because it appears that all parties in this litigation conduct business in New York and the parties' legal memoranda rely exclusively on New York law with respect to these state-law issues, the Court will apply New York law.

at issue in this action created an implied contract pursuant to which Hasbro became obligated to compensate Segan in the event that Hasbro used any of such toy concepts. For the purposes of this motion, the Court will assume that Hasbro in fact "used" Segan's ideas when Hasbro developed Big Frank, Monster Truck Mold N' Mash, and Fantastic Fingernails. Hasbro argues that the Waiver precludes Segan from stating a claiming for breach of implied contract. Because Hasbro relies on the Waiver as a defense to Segan's implied contract claims, the Court must distinguish between the pre-Waiver submission of Frankenstuff to Hasbro and the post-Waiver submission of the three toy ideas.

### a. Pre–Waiver Submission of Frankenstuff

 Plaintiff must satisfy the threshold issue of novelty in order to state a claim for breach of implied contract with respect to Frankenstuff. In New York,

> an idea, whether embodied in a product and called a trade secret or otherwise reduced to concrete form, must demonstrate novelty and originality to be protectible as a property right under "[any] cause of action for [its] unauthorized use."

*Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1178 (2d Cir.1993) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 994 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). The issue of novelty, which the Court may decide on summary judgment, *see, e.g., AEB & Assocs. Design Group, Inc. v. Tonka Corp.*, 853 F.Supp. 724, 734 (S.D.N.Y.1994); *Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161 Misc.2d 627, 614 N.Y.S.2d 878, 881 (Sup.Ct. 1994), is a mixed question of law and fact that the Court must first decide before proceeding or allowing a jury to determine

> both whether the idea was disclosed to the defendant in a confidential or contractual relationship and whether, in violation thereof, the defendant used the idea.

*Hudson Hotels*, 995 F.2d at 1178. The rationale is simple:

> An idea may be a property right. But, when one submits an idea to another, no

promise to pay for its use may be implied, and no asserted agreement enforced, if the elements of novelty and originality are absent, since the property right in an idea is based upon these two elements.

*Id.* (quoting *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 334 N.Y.S.2d 874, 877, 286 N.E.2d 257, 258 (1972)). Ideas that are not novel " 'are in the public domain and may freely be used by anyone with impunity.' " *Murray*, 844 F.2d at 993 (quoting *Ed Graham Productions, Inc. v. National Broadcasting Co.*, 75 Misc.2d 334, 347 N.Y.S.2d 766, 769 (Sup.Ct.1973)). *Accord Oasis Music*, 614 N.Y.S.2d at 882.

Plaintiff mistakenly contends that the New York Court of Appeals' decision in *Apfel v. Prudential–Bache Securities, Inc.* held that novelty or originality is no longer required in causes of action involving disclosure of ideas. The Court of Appeals only held that lack of novelty will not necessarily preclude a cause of action for breach of contract where, as was the case in *Apfel*, a postdisclosure contract for use of plaintiff's idea exists. The fact that the buyer entered into a postdisclosure contract with the seller satisfies the consideration requirement, and "lack of novelty, in and of itself, does not demonstrate a lack of value." *Apfel*, 81 N.Y.2d 470, 600 N.Y.S.2d 433, 436, 616 N.E.2d 1095, 1098 (1993). On the other hand, *Apfel* reaffirmed the requirement of novelty in cases where "the buyer and seller contract for disclosure of the idea with payment based on use, but no separate postdisclosure contract for use of the idea has been made." *Id.* See also *Oasis Music*, 614 N.Y.S.2d at 881.

 Plaintiff next argues that novelty is not required in this instance because the custom in the trade established that companies like Hasbro "agreed to compensate inventors for original product submissions not already developed or otherwise known to them." Thus, plaintiff argues that the industry custom established the terms of postdisclosure contracts for use of ideas, and, therefore, that novelty is not required. Plaintiff is in error for two reasons: First, even plaintiff's statement of the "contract" between Hasbro and plaintiff requires that the Court

find originality, at least with respect to Hasbro. Second, and most importantly, novelty is required in cases such as this one, where a disclosure is made but the parties do not enter into a subsequent written agreement for use of the idea. *See Murray,* 844 F.2d at 990, 994; *see also, Murray v. National Broadcasting Co., Inc.,* 1993 WL 485584, at *2 (S.D.N.Y. Nov. 24, 1993) (denying reconsideration in the wake of *Apfel*). Novelty is required to support a property-based claim because "an idea lacks title and boundaries and cannot be rendered exclusive by the acts of the one who first thinks it." *Apfel,* 600 N.Y.S.2d at 436, 616 N.E.2d at 1098. Without a showing of novelty, sellers cannot "prove that the buyer obtained the idea from them." *Id.* Novelty is also required to support a contract-based claim because "there is no equity in enforcing a seemingly valid contract when, in fact, it turns out upon disclosure that the buyer already possessed the idea." *Id.*

 In determining whether the idea of Frankenstuff is novel or in the public domain, "the central issue is the uniqueness of the creation." *Murray,* 844 F.2d at 993. A plaintiff cannot rest on mere assertions, but must demonstrate some basis in fact to establish the originality or novelty of its idea. *See AEB & Assocs.,* 853 F.Supp. at 734 (citing *Woman Golfer, Inc. v. Meredith Corp.,* 792 F.Supp. 211, 214 (S.D.N.Y.1992)). To establish novelty, plaintiff's idea

> "need not reflect the 'flash of genius,' but it must show[ ] genuine novelty and invention, and not a merely clever or useful adaptation of existing knowledge." ... While even original ideas combine elements that are themselves not novel, novelty cannot be found where the idea consists of nothing more than a variation on a basic theme.

*AEB & Assocs.,* 853 F.Supp. at 734 (quoting *Educational Sales Programs, Inc. v. Dreyfus Corp.,* 65 Misc.2d 412, 317 N.Y.S.2d 840, 844 (Sup.Ct.1970)).

Plaintiff's description of Frankenstuff at the time it submitted it to Hasbro in 1986[14] demonstrates that, although it is inspired in part by Frankenstein, the concept of Frankenstuff is arguably quite distinct from the original monster:

> Frankenstuff is a child's doll designed as a somewhat friendly looking juvenile Frankenstein's monster [sic] whose chest and head can be zipped open to reveal all kinds of interesting and fun toys and goodies.
>
> . . . . .
>
> A [sic] essential part of the charm of Frankenstuff is his *humor.* Beyond the word play of his "toy chest" and the "bats in his belfry", there is the basic funniness of a baby Frankenstein monster.

(Emphasis in original.)

Hasbro contends that Frankenstuff is not novel because "[m]aking a boyish, stuffed-toy version of the Frankenstein monster is not novel." Hasbro points out that MCA has marketed a twelve-inch, soft, plush, baby version of Frankenstein called "Baby Frank," which was sold in MCA's amusement park beginning in 1990. Baby Frank, however, postdates the 1986 submission of Frankenstuff and, other than having green skin, has nothing in common with Frankenstuff. Baby Frank's facial features are quite different from Frankenstuff's, and its head and chest do not open. Therefore, there is an issue of fact with respect to Frankenstuff's "novelty" and summary judgment on this issue must be denied.

#### b. Post–Waiver Toy Submissions

 In New York it is well-established that no implied-in-fact contract can arise if there is an express agreement between the parties that deals with the same subject matter. *See AEB & Assocs.,* 853 F.Supp. at 731 (citing, *inter alia, Julien J. Studley, Inc. v. New York News, Inc.,* 70 N.Y.2d 628, 518 N.Y.S.2d 779, 780, 512 N.E.2d 300, 301 (N.Y. 1987)).

 Plaintiff first argues that the Waiver does not bar its implied contract claims

---

14. According to defendant's 3(g) Statement, this description was submitted to Hasbro in 1991. Plaintiff disputes this and the Court's review of defendant's evidentiary support for its proposition reveals that the Frankenstuff description was, in fact, submitted in December 1986—the first time that Frankenstuff was disclosed to Hasbro.

based on the post-Waiver submissions because the Waiver does not address the same subject matter as plaintiff's claims. According to the plaintiff, the Waiver "does not even mention, much less address, ... Hasbro's obligation to compensate Segan for use of product submissions not previously known to Hasbro." Thus, plaintiff argues that the Waiver applies only to those product concepts that Hasbro had already developed before an inventor's disclosure. The subject matter of the Waiver, however, is well defined. The Waiver expressly defines an inventor's "Submissions" as "ideas, suggestions, inventions, designs, sketches, models and/or other materials ... in which Inventor desires to interest Hasbro to develop, produce, market and/or sell." This definition includes plaintiff's toy concept submissions, and it does not distinguish between product concepts that were previously known to or developed by Hasbro from those that are, from Hasbro's perspective, novel. Furthermore, plaintiff's interpretation makes little sense; if the Waiver applied solely to "Submissions" regarding ideas that Hasbro had already developed, it would have no reason to include Paragraph 3 of the Waiver. Paragraph 3 states that, with respect to "all Submissions made by Inventor," no obligation of any kind may be assumed or implied against Hasbro "unless or until a formal written contract between the parties is signed, and then the obligations will be only as set forth by the terms of such contract." The only reasonable understanding of Paragraph 3 is that it applies to those Submissions in which Hasbro may have an interest because they are new to Hasbro.[15]

■■■■ Plaintiff next argues that the Waiver is ambiguous and that, therefore, summary judgment is inappropriate. In a contract dispute, summary judgment may be granted "only where the agreement's language is unambiguous and conveys a definite meaning." *Sayers v. Rochester Tel. Corp.*, 7 F.3d 1091, 1094 (2d Cir.1993). Because determining whether a writing is ambiguous is a question of law, it is for the Court to decide this threshold issue. A contract is ambiguous "[i]f the language is susceptible to different reasonable interpretations...." *Id.* The Court must examine "the context of the entire integrated agreement" from the perspective of a reasonably intelligent person " ' "who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." ' " *Id.* at 1095 (quoting *Walk–In Medical Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968))). A contract is not ambiguous,

> when contract language has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion."

*Id.* (quoting *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1283 (1978)). Further, a contract does not become ambiguous merely because the parties urge conflicting interpretations of their agreement. *Id.* If the contract is ambiguous, however, then "extrinsic evidence of the parties' intent may be looked to as an aid to construing the contractual language." *Id.*

■■■■ Plaintiff argues the Waiver is ambiguous because it does not expressly waive plaintiff's right to sue Hasbro for misappropriation.[16] That is, plaintiff urges that, although the Waiver may have given him notice that he was not entitled to payment for merely submitting his work, it did not effectively waive his right to payment if his ideas were used by the defendant. Thus, plaintiff contends that, whatever obligations may have arisen out of plaintiff's disclosure, which the plaintiff concedes are covered by the Waiver, the Waiver does not unambiguously reach those claims that consist of defendant's use of plaintiff's ideas.

> [W]hen a party drafts an agreement that it construes as authorizing the appropriation without compensation of another's ideas, such construction will be upheld only if the agreement explicitly apprises the other party of such intended result.

---

**15.** The Court is not, of course, holding that the Waiver applies solely to novel product submissions; rather, the point is that it applies to all submissions, novel or not.

**16.** As the plaintiff puts it,

The Waiver, however, expressly eliminates the plaintiff's ability to claim the existence of a fiduciary relationship—an essential element of a misappropriation claim. In New York, a claim for misappropriation of an idea requires (1) the existence of a legal relationship between the parties in the form of a fiduciary relationship, an express or implied-in-fact contract, or quasi-contract;[17] and (2) the idea must be novel and concrete. *McGhan v. Ebersol*, 608 F.Supp. 277, 284 (S.D.N.Y.1985) (citing *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F.Supp. 1204, 1216 (E.D.N.Y.1981), *aff'd without op. sub. nom. Vantage Point, Inc. v. Milton Bradley*, 697 F.2d 301 (2d Cir.1982)). *Accord Oasis Music*, 614 N.Y.S.2d at 881.

The Waiver negates the existence of a legal relationship based on the presence of a fiduciary or confidential relationship. It explicitly states:

> *No confidential relationship is to be established by such Submission* or implied from consideration of the submitted material, and the material is not submitted "in confidence." (Confidential relationships have been held to create obligations and liabilities which are beyond those that Hasbro is willing to assume.)

(Emphasis supplied.)[18]

Finally, the Waiver also contains broad and unambiguous language foreclosing recourse to any cause of action except those arising under the patent and copyright laws:

> *All of Inventor's rights and remedies* arising out of Inventor's Submission(s) to Hasbro *shall be limited to any rights and remedies* Inventor is accorded *under* United States *Patent and Copyright Laws. All other claims* of whatever nature arising out of Inventor's Submission to Hasbro *are hereby waived.*

(Emphasis supplied.) In conclusion, the Waiver unambiguously precludes all of plaintiff's implied contract claims based on plaintiff's post-Waiver submissions to Hasbro.[19]

## FRAUDULENT INDUCEMENT

Segan also seeks recovery on the theory that Hasbro fraudulently induced Segan to submit its ideas to Hasbro. In New York, the elements of a claim for fraudulent inducement are misrepresentation of a material fact, falsity, scienter, reliance and injury. *See Sado v. Ellis*, 882 F.Supp. 1401, 1405 (S.D.N.Y.1995). "A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties." *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 629 N.Y.S.2d 1009, 1014, 653 N.E.2d 1179, 1184 (1995). Reliance means "reasonable" reliance. *See Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir.1995).

The fraud alleged here consists of Hasbro's alleged oral representations[20] to plaintiff that the Waiver did not modify the understanding between the parties that plaintiff would be compensated for any of plaintiff's toy submissions that Hasbro had not thought of or seen before. Plaintiff claims these representations were false be-

---

17. As noted earlier, the presence of a written contract (the Waiver) precludes any finding of a legal relation based on theories of implied contract or quasi-contract. *See Foxley v. Sotheby's Inc.*, 893 F.Supp. 1224, 1234 (S.D.N.Y.1995) (citing, *inter alia*, *Apfel*, 600 N.Y.S.2d at 437, 616 N.E.2d at 1099).

18. Plaintiff's reliance on *Burten v. Milton Bradley Co.*, 763 F.2d 461, 465 (1st Cir.1985), is odd in light of the fact that in *Burten* the First Circuit cited with approval a case in which a confidential relationship was expressly waived by means of the following:

 "No confidential relationship is to be established by such submission or implied from consideration of the submitted material, and the material is not to be considered to be submitted 'in confidence.' (Confidential relationships have been held to create obligations

which are beyond those that the Company is willing to assume.)"
 *Id.* (quoting *Crown Indus., Inc. v. Kawneer Co.*, 335 F.Supp. 749, 754–755 (N.D.Ill.1971)). This clause is virtually identical to the Waiver's "no confidential relationship" clause.

19. Plaintiff also challenges the validity of the Waiver by claiming it was fraudulently induced and, therefore, voidable. As will be seen below, plaintiff cannot allege fraud in the inducement because plaintiff cannot show it reasonably relied in the alleged misrepresentations.

20. Defendant argues that plaintiff's fraud counts do not satisfy the particularity requirement of Rule 9(b), Fed.R.Civ.P. The Court disagrees. Rule 9(b) requires that

 the circumstances constituting fraud or mistake shall be stated with particularity. Malice,

cause Hasbro never intended to compensate plaintiff for plaintiff's ideas, and that plaintiff relied on these false representations when it signed the Waiver. Finally, plaintiff alleges Hasbro made the misrepresentations "with the specific intent of inducing Plaintiff to execute the Waiver." Thus,

> [h]ad Defendant not misrepresented the effect of the Waiver on the relationship between the parties, Plaintiff would not have signed the Waiver and would not have disclosed its ideas to Defendant.

 Segan's claims for fraudulent inducement, however, must fail as a matter of law because Segan cannot demonstrate that it justifiably or reasonably relied upon the alleged oral misrepresentations. In New York, a party is precluded from establishing reasonable reliance as a matter of law whenever "an express provision in a written contract contradicts a prior alleged oral representation 'in a meaningful fashion.'" *Clanton v. Vagianelis,* 187 A.D.2d 45, 592 N.Y.S.2d 139, 140 (3d Dep't.1993) (quoting *Bango v. Naughton,* 184 A.D.2d 961, 584 N.Y.S.2d 942, 944 (3d Dep't.1992)). *See also General Motors Acceptance Corp. v. Desbiens,* 213 A.D.2d 886, 623 N.Y.S.2d 939, 942 (3d Dep't.1995); *Pinney v. Beckwith,* 202 A.D.2d 767, 608 N.Y.S.2d 738, 739 (3d Dep't. 1994).[21]

The essence of plaintiff's fraud claim is that Hasbro falsely represented that it intended to compensate plaintiff if it used any novel ideas that it had not thought of before or been presented with by a third party, and that the Waiver did not in any way modify this understanding between the parties. According to the plaintiff:

> There is a clear and undeniable understanding between toy companies, including Hasbro, and outside inventors, including plaintiff: if the toy company uses the outside inventor's product concept, the outside inventor will be compensated, unless the toy company had already independently developed the product or seen it from a third party.... The understanding between toy companies and outside inventors is so commonly understood that it is implied in every product presentation.

Even assuming the truth of the alleged misrepresentations, however, they are directly contradicted by Paragraphs 3 and 4 of the Waiver:

> 3. No obligation of any kind is assumed by, nor may be implied against Hasbro and/or its subsidiaries unless or until a formal written contract between the parties is signed, and then the obligations will be only as set forth by the terms of such contract.
>
> 4. All of Inventor's rights and remedies arising out of Inventor Submission(s) to Hasbro shall be limited to any rights and remedies Inventor is accorded under United States Patent and Copyright Laws. All other claims of whatever nature arising out of Inven-

---

intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) requires that plaintiff

> adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.

*Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Plaintiff's allegations, which were elaborated further during Mr. Segan's deposition, satisfy the particularity requirements of Rule 9(b). The alleged representations were made at a June 13, 1990 meeting at Hasbro's office in New York City. Present at the meeting were Mr. Segan and Hasbro's Steve D'Aguanno and John Hall. The Court finds that plaintiff's statement of the allegedly false misrepresentations satisfies Rule 9(b).

**21.** Plaintiff ignores the recent Appellate Division decisions *quoted above,* and refers instead to older New York federal and state decisions that principally rely on *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959) and *Citibank v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985). *Danann* and *Plapinger* had been interpreted to mean that a party cannot establish reasonable reliance when it has signed an agreement that specifically disclaims reliance upon a representation. *See, e.g., Northwestern Nat'l Ins. Co. of Milwaukee v. Alberts,* 717 F.Supp. 148, 154 (S.D.N.Y.1989). As the Appellate Division in *Bango* recognized, however,

> the rationale underlying [*Danann* and *Plapinger*] applies in any case where ... an express provision in the written contract contradicts the claimed oral representations in a meaningful fashion. In such event, the conflict between the provisions of the written contract and oral representations negates the claim of reliance upon the latter.

*Bango,* 584 N.Y.S.2d at 944 (citing cases).

tor's Submission to Hasbro are hereby waived.

Furthermore, Segan's representative (and the person who signed the Waiver for Segan—Marc Segan) admitted at his deposition that Paragraphs 3 and 4 contradict Hasbro's alleged misrepresentations. When Mr. Segan was asked whether Paragraph 3 was inconsistent or contradicted the alleged misrepresentations by Hasbro, Mr. Segan responded, "Possibly, yes." When asked why, Mr. Segan responded:

> [ANSWER] I suppose I think that they [Hasbro's Mr. Hall and Mr. D'Aguanno] were indicating a willingness to take on more obligation than later they say they're willing to.
> [QUESTION] Later they say they're willing to in Paragraph 3?
> [ANSWER] And by their actions.

With respect to Paragraph 4 of the Waiver, Mr. Segan stated:

> [QUESTION] Now, focusing on Paragraph 4, is that inconsistent with what you believe Mr. D'Aguanno and Mr. Hall told you before you signed the agreement?
> [ANSWER] Yes, I think so.

> . . . . .

> [QUESTION] Is it your belief that it contradicts Paragraph 4, what they said contradicts Paragraph 4?
> [ANSWER] Yes.
> [QUESTION] Can you explain why you believe that what Mr. D'Aguanno and Mr. Hall said to you contradicts Paragraph 4.
> [ANSWER] Because the context of our meeting, ... and the context of all discussions both before, during and after this meeting suggest, and sometimes state, as I—in the discussion of this agreement, I recall, it was stated that, if they liked the item, they haven't seen or done before, they'll buy it and they want to do it.

I therefore find that plaintiff cannot establish reasonable reliance on Hasbro's alleged misrepresentations as a matter of law.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is de-nied with respect to Counts Two (insofar as it relates to the 1986 presentation) and Ten of the Amended Complaint and granted with respect to Counts One, Two (insofar as it relates to the 1991 presentation), and Three to Nine of the Amended Complaint.[22]

SO ORDERED.

---

**22.** Counts III, VI, and IX allege causes of action for an "accounting" with respect to plaintiff's three toy concept submissions. As defendant points out, these are not causes of action but remedies and, therefore, they are hereby dismissed.